STATE of Iowa, Appellee,

v.

George H. REAVES, Appellant.

Nos. 59065 and 59066.

Supreme Court of Iowa.

May 25, 1977.

Rehearing Denied July 26, 1977.

Bertram B. Metcalf, Davenport, for appellant.

Richard C. Turner, Atty. Gen., and Edward N. Wehr, County Atty., for appellee.

HARRIS, Justice.

Defendant has brought separate appeals after entering pleas of guilty in two sepa-rate charges brought against him in Scott County. In cause # 17274 defendant was charged with the crime of breaking and entering in violation of § 708.8, The Code. He twice entered guilty pleas to the charge. After first entering a plea of guilty he was sentenced to a ten-year term at the men's reformatory. Thereafter he was permitted to withdraw the guilty plea and enter a plea of not guilty. Thereafter he withdrew the plea of not guilty and again entered a plea of guilty. The second guilty plea proceeding is challenged in this appeal.

In a separate cause # 17919 defendant was charged with larceny of a motor vehicle in violation of § 321.82, The Code. He was allowed to enter a plea of guilty to the lesser-included offense of operating a motor vehicle without the owner's consent in violation of § 321.76, The Code.

Defendant assigns the same propositions as grounds for reversal in both appeals. He claims: "The trial court erred in failing to inform the defendant that one of the essential elements of the crime of breaking and entering and of the crime of operating a motor vehicle without the owner's consent is intent."

The present question excepted, our review of the record discloses the trial court exhaustively complied with the suggestions contained in *State v. Sisco,* 169 N.W.2d 542 (Iowa 1969) and *Brainard v. State,* 222 N.W.2d 711 (Iowa 1974). In the proceeding in which defendant pleaded guilty to breaking and entering the record discloses the following:

"THE COURT: "* * * The essential elements of the charge to which you are pleading are as follows: that the occurrence took place on or about June 25, 1974; that it took place in Scott County, Iowa; and that you broke and entered the Five Cities Tool Company at 723 Schmidt Road. By break and enter, doesn't mean you took a sledge hammer and broke in a window or door. If you simply opened the door without authority and went into the premises, this, in law, is breaking and entering. Do you understand?

"MR. REAVES: Yes, I do.

"THE COURT: Do you understand that by pleading guilty you are admitting that you are, in fact, guilty of the crime of breaking and entering as charged against you in this case?

"MR. REAVES: Yes, I do.

"THE COURT: Did you commit the offense charged against you in this case?

"MR. REAVES: Yes.

"THE COURT: Will you tell me just briefly in your own words what you did?

"MR. REAVES: I went through the front door of Five Cities Tool Company and took out four large tool boxes.

"THE COURT: How did you get into the place?

"MR. REAVES: Through the front door.

"THE COURT: Did you open it or break it in?

"MR. REAVES: I opened it.

"THE COURT: Was it locked?

"MR. REAVES: Yes.

"THE COURT: And how did you open it?

"MR. REAVES: Pried it open.

"THE COURT: Then there is no question in your mind that you did break and enter this particular place of business and take from them the property you just mentioned?

"MR. REAVES: Yes.

"THE COURT: You did it?

"MR. REAVES: Yes.

"THE COURT: Mr. Metcalf, as defense counsel do you know of any reason why defendant should not plead guilty?

"MR. METCALF: I've considered this case very carefully, Your Honor, and I know of no reason why the defendant should not plead guilty."

In the proceeding in which defendant pleaded guilty to operating a motor vehicle without owner's consent the record discloses the following:

"THE COURT: Insofar as that included offense of operating a vehicle without the owner's consent is concerned, you are now being charged actually with the crime of operating a motor vehicle without the owner's consent, which is alleged, occurred as follows: that you did on or about the 17th day of June 1975 in Scott County, Iowa operate a motor vehicle without the owner's consent. The essential elements of that crime are that the incident occurred on or about June 17, 1975 and that it occurred in Scott County, Iowa and that you operated or drove the car without the consent of the owner of the car.

"THE COURT: Do you understand that by pleading guilty you are admitting that you are in fact guilty of the crime charged against you of operating a motor vehicle without the owner's consent?

"MR. REAVES: Yes, I do.

"THE COURT: Did you commit the offense against you in this case?

"MR. REAVES: Yes.

"THE COURT: Just tell me briefly in your own words just what you did in this case.

"MR. REAVES: I was down on High Street and I turned the corner on Rockingham and was going east and there was a car in this tavern and I jumped in and took it.

"THE COURT: And this car was not owned by you, was it?

"MR. REAVES: No, sir.

"THE COURT: According to the minutes of testimony that you were presented with at your trial, the car belonged to a man by the name of Richard O. Korte. Do you know him?

"MR. REAVES: No, I don't.

"THE COURT: Did you have permission from him to use his car?

"MR. REAVES: No, sir.

"THE COURT: Did you have permission from anyone that you might think was the owner of it to take the car and drive it?

"MR. REAVES: No, sir."

Of course intent is an essential and necessary element of the crime of

breaking and entering. *State v. Berenger,* 161 N.W.2d 798, 800 (Iowa 1968). It is equally clear intent is an essential element of the crime of operating a motor vehicle without consent. *State v. Drummer,* 254 Iowa 324, 330, 117 N.W.2d 505, 507–508 (1962).

It is clear defendant possessed in each case the required criminal intent. But it is less clear he understood intent was an element of each of the two crimes. The trial court omitted any specific reference to intent when listing the elements of the offenses. The question is whether, under these circumstances, the failure vitiated the guilty plea. Notwithstanding language in some of our prior opinions we now believe and hold it did not.

■ I. This case provides a graphic example of how even the most careful trial court can be charged with omitting some part of a guilty plea litany. Both guilty pleas were the result of a plea bargain. No questions are raised as to defendant's awareness of the penal consequences of his pleas. It is not contended the pleas were involuntary or lacked a factual basis. Defendant's sole claim is that the trial court failed to determine he understood the charge. The claimed error is based entirely on the trial court's failure to inform him that one of the essential elements of each crime was intent. The record discloses that when the trial court recited the elements of the two offenses to the accused no mention of intent was included. The county attorney's information contained no allegation of intent. Such was not required. § 773.14, The Code.

■ Throughout the period of time we have applied the *Sisco* principles we have refused to reverse judgments based on a guilty plea on the grounds the trial court failed specifically to explain each element if under all the circumstances it is apparent the accused understood the nature of the charge. We have recognized "understanding the charge" did not inevitably require a complete listing by the trial court of the legal elements of the offense. *State v. Townsend,* 238 N.W.2d 351, 355 (Iowa 1976); *State v. Oberbreckling,* 235 N.W.2d 121, 122 (Iowa 1975); *State v. Watts,* 225 N.W.2d 143, 144–145 (Iowa 1975); *State v. Hansen,* 221 N.W.2d 274, 276 (Iowa 1974); *State v. Bedell,* 220 N.W.2d 891, 892 (Iowa 1974).

What is meant by the term "understood the nature of the charge?" Obviously it cannot mean the accused should be able to write a bar examination question on the subject. Neither can the expression mean merely that the accused was generally aware of the practical realities of the situation. The required level of an accused's understanding must lie somewhere between the two extremes. The question is only part of a broader one.

■ II. In reviewing guilty plea proceedings justice and logic now require us to turn our focus from courtroom *litanies* to the accused's *awareness* of the requisites outlined in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) and *McCarthy v. U. S.,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). Our approach to these requisites has been explained in many cases principally *State v. Sisco,* supra, and *Brainard v. State,* 222 N.W.2d 711 (Iowa 1974).

■ These and a host of other authorities point out the crucial importance of guilty pleas and as a consequence require: The trial court must determine the accused understands the charge. The accused must be aware of the penal consequences of the plea. The plea must be voluntary. Before the plea is accepted the trial court must find a factual basis for the plea.

The first three of these principles (defendant's understanding of the charge, his awareness of the plea's penal consequences, and the voluntariness of his plea) are subjective matters relating to the accused's state of mind. Problems are encountered in proving a subjective understanding. Tension developed between the necessity of the understanding and the difficulty of showing it.

■ In *Sisco* and especially in *Brainard,* relying upon the ABA Standards, we seized

upon a colloquy between the trial judge and the accused as the tool for demonstrating understanding. Use of such a colloquy for this purpose has at least two disadvantages. It duplicates an advisory function that should be provided, often at great public expense, by defendant's own counsel. It proceeds on the highly doubtful premise an accused can thoughtfully assimilate and act upon the information given him in the emotionally charged circumstances existing in the courtroom. The colloquy's saving advantage rests in its being objective rather than subjective. The colloquy can be shown. Once shown we conclusively presume it was assimilated and then it becomes *ipso facto* sufficient to show compliance with the *Sisco* requirements.

But while the colloquy is *sufficient* the question recurs whether it is *necessary*. Most of our cases, especially since *Brainard*, have demanded the complete colloquy. Accordingly form has increasingly taken control over substance.

We are besieged with appeals after guilty pleas by persons (such as defendant Reaves) who do not even *claim* they were unaware of the particular right they urge the trial judge failed to mention in the challenged colloquy.

Under existing rules attorneys, whose sworn professional responsibility it is to advise their clients, can with impunity take part in a guilty plea proceeding, even expressly approve it, and then assign error in the trial court's failure to make a record of advice on some particular item. This makes it possible for attorneys to base an appeal upon an error in the proceedings which they recognized but failed to disclose at the time the plea was taken.

We continue to be called upon to review guilty plea proceedings with no apparent diminution in the rate, notwithstanding our detailed explanation of acceptable procedure. In the following cases since *Sisco* we have undertaken such review: *State v. Vantrump*, 170 N.W.2d 453 (1969); *State v. Lindsey*, 171 N.W.2d 859 (1969); *State v. Mehuys*, 172 N.W.2d 131 (1969); *State v. Jackson*, 173 N.W.2d 567 (1970); *State v. Abodeely*, 179 N.W.2d 347 (1970); *State v. Helter*, 179 N.W.2d 371 (1970); *State v. Weckman*, 180 N.W.2d 434 (1970); *State v. Stoddard*, 180 N.W.2d 448 (1970); *State v. Watts*, 186 N.W.2d 611 (1971); *State v. Zacek*, 190 N.W.2d 415 (1971); *Young v. Brewer*, 190 N.W.2d 434 (1971); *Melka v. Haugh*, 190 N.W.2d 884 (1971); *Herman v. Brewer*, 193 N.W.2d 540 (1972); *State v. Kelley*, 195 N.W.2d 702 (1972); *Foster v. Brewer*, 197 N.W.2d 366 (1972); *State v. Quinn*, 197 N.W.2d 624 (1972); *Benton v. State*, 199 N.W.2d 56 (1972); *State v. Bledsoe*, 200 N.W.2d 529 (1972); *State v. Lynch*, 200 N.W.2d 896 (1972); *State v. Christensen*, 201 N.W.2d 457 (1972); *State v. Slawson*, 201 N.W.2d 460 (1972); *State v. Hackett*, 201 N.W.2d 487 (1972); *State v. Kephart*, 202 N.W.2d 62 (1972); *State v. Clary*, 203 N.W.2d 382 (1973); *State v. Thomas*, 205 N.W.2d 717 (1973); *State v. Bell*, 210 N.W.2d 423 (1973); *State v. Cliburn*, 210 N.W.2d 440 (1973); *State v. McGee*, 211 N.W.2d 267 (1973); *State v. York*, 211 N.W.2d 314 (1973); *State v. Goodwin*, 212 N.W.2d 399 (1973); *State v. Kobrock*, 213 N.W.2d 481 (1973); *State v. Stakenburg*, 215 N.W.2d 265 (1974); *State v. Reppert*, 215 N.W.2d 302 (1974); *Ogden v. State*, 215 N.W.2d 335 (1974); *Allen v. State*, 217 N.W.2d 528 (1974); *State v. Bedell*, 220 N.W.2d 891 (1974); *State v. Hansen*, 221 N.W.2d 274 (1974); *State v. Marsan*, 221 N.W.2d 278 (1974); *Brainard v. State*, 222 N.W.2d 711 (1974); *State v. Williams*, 224 N.W.2d 17 (1974); *State v. Dowis*, 224 N.W.2d 467 (1974); *State v. Watts*, 225 N.W.2d 143 (1975); *State v. Fryer*, 226 N.W.2d 36 (1975); *State v. Greene*, 226 N.W.2d 829 (1975); *State v. Vogel*, 228 N.W.2d 8 (1975); *State v. Walton*, 228 N.W.2d 21 (1975); *State v. Runge*, 228 N.W.2d 35 (1975); *State v. Tillman*, 228 N.W.2d 38 (1975); *State v. Dentler*, 231 N.W.2d 594 (1975); *State v. Frazier*, 232 N.W.2d 480 (1975); *State v. Parrish*, 232 N.W.2d 511 (1975); *State v. Johnson*, 234 N.W.2d 878 (1975); *State v. Oberbreckling*, 235 N.W.2d 121 (1975); *State v. Harvey*, 236 N.W.2d 47 (1975); *State v. Townsend*, 238 N.W.2d 351 (1976); *State v. Wall*, 239 N.W.2d 548 (1976); *State v. Findley*, 239

N.W.2d 852 (1976); *State v. Barlow,* 240 N.W.2d 448 (1976); *State v. Rhodes,* 243 N.W.2d 544 (1976); *State v. Buhr,* 243 N.W.2d 546 (1976); *Hauser v. State,* 244 N.W.2d 807 (1976); *State v. Schultz,* 245 N.W.2d 316 (1976); *Wallace v. State,* 245 N.W.2d 325 (1976).

The foregoing list does not include a number of unreported cases which raised the same issues. We have failed to realize the promise of *Sisco* and *Brainard* to reduce the number of guilty plea appeals.

Such effort, with the consequent expenditure of public funds might be justified if there were some reasonable hope it realistically contributed toward one of the goals mentioned in *McCarthy*: "* * * [T]o assist the * * * judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. * * *." However we no longer think it realistic to hope our rigid colloquy requirements serve that purpose.

We have also woefully failed to achieve the other goal stated in *McCarthy* as justification for our procedure: "[T]o * * * help reduce the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions * *." 394 U.S. at 472, 89 S.Ct. at 1174, 22 L.Ed.2d at 428. See *Brainard,* 222 N.W.2d at 713–714. Those "frivolous attacks" continue unabated.

▋ It appears other states do not uniformly require a court record similar to the one we have come to demand. Annot., 97 A.L.R.2d 549s, 22 C.J.S. Criminal Law § 423, pp. 1181–1186; 21 Am.Jur.2d, Criminal Law, §§ 486–489, pp. 477–480. It is and should be required of a judge, before accepting a guilty plea, to be satisfied defendant has the requisite awareness, the plea is voluntary, and that a factual basis for the plea exists. The colloquy specified in *Sisco* and *Brainard* remains a proper way to show such awareness. But it has proven unwise to blindly *require* the trial judge to fulfill a prescribed colloquy to represented defendants. Such a requirement goes far beyond what is demanded by the United States Supreme Court. *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *Wallace v. State,* 245 N.W.2d 325 (Iowa 1976).

We therefore hold the *Sisco* requirements may be shown in the manner specified in *Brainard.* However the search for satisfaction of those requirements need not begin and end with the trial court's colloquy. This holding is not without precedent. In *Reppert,* supra, 215 N.W.2d at 307 we said: "The question is not whether defendant learned of such penalty from the judge in a formal proceeding but whether he had knowledge as to such matter, whether it was from the judge, his lawyer or from some other source. *Tucker v. United States,* 5 Cir., 409 F.2d 1291, 1295." See also *Satchfield v. United States,* 450 F.2d 284, 285 (5 Cir. 1970).

▋ Unless something causes, or reasonably should cause, the trial judge to believe otherwise he may rely on defense counsel's assurances that an accused has been advised of, and is aware of, everything required by *Sisco.* See *Wallace,* supra. It would seem an accused can assimilate and consider the necessary information more effectively in private conversation with his attorney than upon a public colloquy by the trial court. While it remains the burden of the State to show an accused's awareness it may be shown by the colloquy specified in *Brainard,* by defense counsel's assurances, or by anything shown of record which establishes such awareness.

▋ In any appeal taken after the filing of this opinion an accused challenging the adequacy of his guilty plea proceeding must:

A. first present such claim to the trial court in a motion in arrest of judgment under chapter 788, The Code.[1]

B. hereafter claim to have been unaware, as well as not advised, of the claimed omission.

---

1. Because the colloquy will no longer mark the limitation for showing satisfaction of the *Sisco* requirements it will be appropriate and helpful to have the challenge first heard in trial court.

■ Defense counsel have been previously admonished of their duty beyond merely advising their clients. They have a clear professional responsibility to assist the making of a record showing the plea to be intelligent, voluntary, and accurate. *State v. Williams*, supra, 224 N.W.2d at 19. Defense counsel are again advised of this responsibility and admonished a failure to discharge it reflects unfavorably upon the quality and value of their professional services.

■ III. Turning to the case at hand we believe defendant understood the nature of the charges against him. Participation in the proceedings by defense counsel casts light on the question of whether defendant understood the charge. Defendant's counsel did not specifically state he had advised defendant of the elements. However his assurances in both cases that he knew of no reason why a guilty plea could not be accepted is significant. It is an indication he had discharged his professional responsibilities to his client.

There is no indication in the record defendant's counsel had failed in his professional responsibilities to defendant. Through plea bargaining he obtained a most favorable disposition of the charges. He successfully prevailed upon the trial court to impose six month jail sentences rather than prison terms. He even managed to secure for defendant a better disposition than the one for which he bargained. The sentences were in fact imposed to run concurrently rather than, as sought in the bargain, consecutively.

Finally we can take judicial notice of the fact defendant's counsel was known to the trial court to be an attorney of ability and experience. His experience included several years as judge of Davenport Municipal Court.

Taking the record as a whole we believe it is abundantly clear defendant understood the nature of each charge to which he entered his guilty plea. Since we believe defendant's awareness and not precise recitations by the trial judge should control we hold his convictions both should be affirmed.

AFFIRMED.

All Justices concur except LeGRAND, J., who concurs specially, and McCORMICK, MASON, RAWLINGS and REYNOLDSON, JJ., who dissent.

LeGRAND, Justice (concurring specially).

I concur in the majority opinion, but I feel impelled to respond to the dissent because it grossly exaggerates the majority opinion's purpose and effect and erroneously describes the present state of the law in other jurisdictions.

I. First, let me say I believe this appeal could have been disposed of on the ground there was substantial compliance with *Sisco* and *Brainard* standards, even though the majority has elected not to go that route.

Defendant claims, and the dissent agrees, he is entitled to have his plea set aside because the trial court did not specifically advise him that intent was an element of each of the two crimes to which he pled guilty. It is claimed, too, the trial court erroneously set out for defendant the elements of each crime by omitting the element of intent in doing so. This is true only if one places full reliance on a portion of the record while disregarding the full record and the totality of the circumstances.

The trial court interrogated defendant at length concerning the charge of operating a motor vehicle without the owner's consent. He explored the question of consent, purported consent, and mistaken consent. Defendant's answers unequivocally disclosed he claimed none of these. As I understand the criminal intent in this charge, it is established by proof of driving without any claim of right to do so, either real or supposed. Under this record, it is unrealistic to say defendant did not know or understand this because the trial court failed to use the expression "criminal intent." This was inherent in the court's interrogation. It is inconceivable defendant did not know the State must prove lack of such consent.

The same is true to a lesser degree on the charge of breaking and entering. Again the interrogation elicited that defendant broke into the place and removed some boxes of merchandise. On the whole record—not just on one incomplete statement of the trial court concerning elements—there can be no reasonable doubt defendant understood what he was charged with, understood what the State must prove and understood what would constitute a defense to the information.

II. Turning now to my disagreement with the dissent, I do not find the state of the law in other jurisdictions to be as represented there. If anything, the trend is precisely contrary to the dissent's claims. The asserted unanimity among the states as to guilty plea procedures simply does not exist.

Among the cases contrary to the position taken by the dissent is *Merrill v. State*, 206 N.W.2d 828, 831 (S.D.1973). There the court said:

"The sentencing court in the instant case should have made a more complete record by advising petitioner of his privilege against self-incrimination. *We hold that the court's failure to do so will not vitiate the plea where the postconviction proceedings clearly show that the petitioner was aware of his constitutional rights and that he understood those rights at the time he entered his guilty plea.* Such a finding will support the ultimate finding that petitioner's guilty plea was in fact voluntarily and intelligently entered." (Emphasis added.)

In *Edwards v. State*, 51 Wis.2d 231, 186 N.W.2d 193, 195 (1971), the Supreme Court of Wisconsin said *Boykin* did not require a defendant to specifically waive his constitutional rights "in seriatim form on the record." The court put reliance on the fact that defendant did not claim ignorance of his rights but merely objected because the record did not show a specific waiver of them. The court said:

"The record as a whole shows Edwards understood what constitutional rights he waived by his plea and that is sufficient."

In *State v. Turner*, 186 Neb. 424, 183 N.W.2d 763, 765 (1971) the Nebraska Supreme Court said that the defendant need not be given an item-by-item review of his constitutional rights nor need the court obtain a separate expressed verbal waiver as to each of them before it can find an intelligent and voluntary waiver by defendant.

Apparently besieged by numerous guilty plea cases, much as we are, the Supreme Court of Michigan felt it necessary to consider the problem in a special case entitled *In re Guilty Plea Cases*, 395 Mich. 96, 235 N.W.2d 132, 138–139 (1975). There the court said:

"In the necessary accommodation of the desirable with the practical it would be unrealistic to impose on the judge the obligation to impart to a defendant the substantive law applicable to his case."

In this case the Michigan court detailed a number of specific omissions and errors which did not constitute grounds for setting aside a guilty plea.

The court held that the failure to advise the defendant of his rights does not necessarily require a reversal of his plea except as to the so-called "Jaworski rights" set out in *People v. Jaworski*, 387 Mich. 21, 194 N.W.2d 868, 871 (1972). The three "Jaworski rights" are right to trial by jury, right to confront witnesses, and right against self-incrimination.

Michigan further amended its rules to relax the requirements in taking guilty pleas. The new rule provides the court need not explain the elements of the offense, or possible defenses, to a defendant before accepting a guilty plea. (235 N.W.2d at 149).

A number of the federal circuits have also refused to permit a defendant to escape the consequences of his plea on grounds much like the dissent finds to be reversible error.

In *United States v. Sherman*, 474 F.2d 303, 305 (9th Cir. 1973) we find this:

"A criminal defendant possesses a great number of rights which he is foreclosed from asserting by the entry of a guilty plea * * * Requiring a specific waiv-

er of every one would only sow the seeds for later collateral attack  *  *  * "

In *United States v. Frontero,* 452 F.2d 406, 415 (5th Cir. 1971) the court said that knowledge of the consequences of a plea need not come from the judge, "despite what the *McCarthy* case says," but may come from any source.

In *Wade v. Coiner,* 468 F.2d 1059, 1060 (4th Cir. 1972) the court said:

"As a matter of expediency and circumspection, state judges may choose to engage in the colloquy mandated for their federal colleagues by Rule 11, but there is nothing in *Boykin* that requires them to do so. The exhortation to state judges to exercise the utmost solicitude 'in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences' is silent as to the method of discharging that function. If the record affirmatively shows that the plea was intelligently and voluntarily entered, that is enough."

The recent Supreme Court case of *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) apparently contains something for everyone. The dissent finds considerable comfort in that case; so do I. To me, for instance, that opinion rather clearly states courts may ordinarily assume a defendant has been advised of elementary and fundamental rights by his counsel as a factor in determining whether defendant entered a voluntary and intelligent plea. The court said:

"Normally, the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.  *  *  * "

The foregoing authorities are cited only to demonstrate courts are not, as the dissent insists, "raising instead of lowering their sensitivity to the critical issues in guilty plea cases." The cases cited are illustrative, not exclusive, on the question.

I find the dissent's insistence on the formalism of *Sisco* and *Brainard* rather than on the substance of the rules announced there to be unreal, illogical, and contrary to what those opinions themselves say.

Despite protestations to the contrary, *Sisco* and *Brainard* did promise relief from frivolous appeals following guilty pleas. *See State v. Sisco, supra,* 169 N.W.2d at 546; *Brainard v. State, supra,* 222 N.W.2d at 713. Instead we have had an unending stream of such appeals.

The dissent reminds us of Learned Hand's maxim that justice should not be rationed. I doubt Justice Hand meant that to set a unilateral standard. Society, too, is entitled to justice and to have criminal charges resolved promptly and fairly.

This dual obligation to the defendant and to society is what we had in mind when we called on lawyers to be more diligent in making guilty pleas *valid* guilty pleas. *State v. Williams,* 224 N.W.2d 17, 19 (Iowa 1974).

The Michigan Supreme Court was even more pointed in its consideration of this same question in *People v. Jaworski, supra,* 194 N.W.2d at 873, where this appears:

"This Court could not fail to note that this appeal was brought by the same counsel who assisted the defendant, and, presumably as an officer of the court, the trial court as well. A certain anomaly is evident. On the one hand this attorney counseled with defendant presumably advising him of his legal rights in submitting a guilty plea, in this case even certifying in writing, with approval, defendant's written statement that he pleads 'understandingly.' On the other hand, the same counsel, not too many months later, helps defendant petition to review the guilty plea procedure on the claim that defendant did not 'understandingly' waive his *Boykin* rights.

"The anomaly presents a dilemma. There are esteemed jurists including

those who have sat on this bench who have felt that guaranteeing counsel to defendant practically assures defendant all his legal rights, unless counsel proves incompetent in the case. There are others that feel defendant's rights are so basic that while assistance of counsel is the best assurance that the defendant will have concerned and learned advice, the court should still on the record advise defendant so that defendant's rights will not only be presented to him but impressed upon him.

"In this case, if we were to follow the philosophy that assuring counsel insures understanding pleas, we should dismiss the petition for review—somewhat leaving counsel hoisted on his own petard as far as serving his client. On the other hand, if we should grant relief, we would in effect be passing judgment *sub silentio* that we could not as a judicial procedure rely on counsel to fully advise a defendant of his rights.

"This leaves unspoken a theoretical further alternative, namely a criminal trial as an adversary procedure not only between defendant and prosecutor, but between defendant and the court as well. The implications of this certainly do not comport with this Court's philosophy of the proper administration of justice. As a consequence, we shall look to counsel in all criminal cases to advise their clients to the best of their ability, and as well or better than the high standard that the State Bar will seek to impose. But·further than that this Court, regarding attorneys as officers of the court, will look to them to cooperate with the courts and not only see that their clients are personally well advised by them, but that the court will be assisted to see that all of a client's rights are protected on the record. An attorney will do this not only in fulfillment of his oath and duty as an attorney, but also because any petition for review that is based on the defendant seeking a plea review on the grounds he did not enter his plea understandingly is a reflection on both the court and the defendant's counsel, and incidentally insofar as proper procedure could have avoided the necessity of review, a burden on the administration of justice, and a disservice, if not an injustice, to others who have occasion to employ or operate the machinery of justice."

I do not believe the majority opinion does violence to the *substance* of *Sisco* and *Brainard.* Rather it is a reasonable, fair, and constitutional effort to resolve this perplexing question.

McCORMICK, Justice (dissenting).

With today's decision, Iowa stands alone among all jurisdictions in its refusal to assure or vindicate federal constitutional rights in guilty plea cases.

Since the landmark decision of the United States Supreme Court in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), all jurisdictions not already in conformity with its holding have brought their law into compliance with it by judicial decision, statute or rule, or by some combination of these methods. Iowa was in the forefront of this movement with its decision in *State v. Sisco,* 169 N.W.2d 542 (Iowa 1969). Today, when most courts are raising instead of lowering their sensitivity to the critical issues in guilty plea cases, this court has chosen to bury the *Sisco* case and, along with it, the constitutional rights it protects.

In affirming these two felony convictions, the court charges this defendant, an indigent, unskilled 19-year-old high school dropout, with the alleged bad faith of his lawyer and imputes to him a knowledge and understanding of the law which the learned trial court did not display. In doing so, the court has refused to follow controlling precedent from the United States Supreme Court and, without saying so, has either overlooked or overruled a number of decisions of this court. Moreover, through *dictum,* it has adopted procedures inconsistent with a rule of criminal procedure enacted by the legislature on premises which, at best, are mistaken. Furthermore, the court's new procedures do not comport with due process.

They are also unwarranted, unwise, and at variance with procedures in all other jurisdictions.

Analysis of the court's opinion requires examination of decisions of the United States Supreme Court and this court. The court is not free to overrule precedent based on authoritative decisions of the Supreme Court under the federal constitution. Other precedent should not be casually overruled. Even as to the category of cases the court is free to overrule, it should at a minimum identify the cases being overruled and carefully explain whether the prior holdings are overruled wholly or in part. When the cases overruled contain judicial rules implementing constitutional principles, they should not be overruled unless equivalent alternative procedures are prescribed. Constitutional rights are mere abstractions unless they are procedurally assured. Moreover, the premises on which precedent is overruled should be accurate, defensible and fully stated. I do not believe the present decision meets these standards.

I. *The court's holding denies due process under guilty plea decisions of the United States Supreme Court.* Relinquishment of the presumption of innocence is not a minor step. When an accused pleads not guilty, the State cannot obtain a conviction unless it proves his guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). A plea of guilty relieves the State of that heavy burden. The Supreme Court has said:

A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with a full understanding of the consequences. *Kercheval v. United States*, 274 U.S. 220, 223–224, 47 S.Ct. 582, 583, 71 L.Ed. 1009, 1012 (1927).

The court held a plea unfairly obtained or given through ignorance, fear or inadvertence should be vacated, without regard to the issue of guilt or innocence. The requirement that a plea of guilty not be accepted unless voluntary and intelligent is a mandate of due process.

In *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859, 862 (1941), the court applied the principle which is at issue in the present case, holding that a plea of guilty cannot stand as an intelligent admission of guilt unless the accused has "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process."

Two major guilty plea cases were decided by the Supreme Court in 1969, *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), and *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

*McCarthy* involved an interpretation of rule 11 of the Federal Rules of Criminal Procedure. Although the court found it unnecessary to decide whether the procedure under rule 11 was constitutionally required, it noted the rule's requirement of a personal colloquy between the trial court and the accused was "designed to assist the district judge in making the constitutionally required determination that a defendant's plea of guilty is truly voluntary." 394 U.S. at 465, 89 S.Ct. at 1170, 22 L.Ed.2d at 424–425. In addition the court found the rule implemented the due process mandate that a guilty plea not be accepted unless voluntary and intelligent.

The contentions which were rejected by the Supreme Court in *McCarthy* are the premises on which the new procedures adopted in today's opinion of this court are based. The trial judge did not personally address McCarthy to determine whether he understood the charge. However, McCarthy's lawyer told the judge he had advised his client of the consequences of his plea. The government argued, like the majority in the present case, that the court could rely on the assurances of counsel and assume the

plea was intelligently entered. Reviewing the language and purposes of rule 11, the court rejected the government argument. The court also rejected a government contention that the issue whether the plea was voluntary and intelligent should be settled in a later evidentiary hearing. The court held rule 11 was designed to eliminate any need for a later fact-finding proceeding where " 'greater uncertainty is bound to exist since in the resolution of disputed contentions problems of credibility and of reliability of memory cannot be avoided * * *.' " The court added:

> There is no adequate substitute for demonstration *in the record at the same time the plea is entered* the defendant's understanding of the nature of the charge against him. 394 U.S. at 470, 89 S.Ct. at 1173, 22 L.Ed.2d at 427.

The court held noncompliance with the rule required that an accused be permitted to plead anew.

In *Boykin* a defendant, represented by counsel, entered guilty pleas to five charges of robbery. The judge did not question the defendant, and the defendant did not address the court. On automatic appeal from the resulting death sentence, the Alabama Supreme Court affirmed. Three justices dissented on the ground that the record was inadequate to show the accused had intelligently and knowingly pled guilty. A fourth justice recognized the problem but presumed the trial judge had done his duty. Reviewing the case on certiorari, the Supreme Court recounted these events and then held, "It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary."

The court added:

> A plea of guilty is more than a confession which admits that the accused did various acts; it is itself· a conviction; nothing remains but to give judgment and determine punishment. See *Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009, 1012. Admissibility of a confession must be based

on a "reliable determination on the voluntariness issue which satisfies the constitutional rights of the defendant." *Jackson v. Denno,* 378 U.S. 368, 378, 84 S.Ct. 1774, 1786, 12 L.Ed.2d 908, [922, 1 A.L.R.3d 1205]. The requirement that the prosecution spread on the record the prerequisites of a valid waiver is no constitutional innovation. In *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70, [77], we dealt with a problem of waiver of the right to counsel, a Sixth Amendment right. We held: "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."

We think that the same standard must be applied to determining whether a guilty plea is voluntarily made. For, as we have said, a plea of guilty is more than an admission of conduct; it is a conviction. Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect coverup of unconstitutionality. The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards. *Douglas v. Alabama,* 380 U.S. 415, 422, 85 S.Ct. 1074, 1078, 13 L.Ed.2d 934, [938].

Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. Second, is the right to trial by jury. *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491. Third, is the right to confront one's accusers. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. We cannot presume a waiver of these three important federal rights from a silent record.

What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought (*Garner v. Louisiana*, 368 U.S. 157, 173, 82 S.Ct. 248, 256, 7 L.Ed.2d 207, [219]; *Specht v. Patterson*, 386 U.S. 605, 610, 87 S.Ct. 1209, 1212, 18 L.Ed.2d 326, [330]), and forestalls the spinoff of collateral proceedings that seek to probe murky memories.

The three dissenting justices in the Alabama Supreme Court stated the law accurately when they concluded that there was reversible error "because the record does not disclose that the defendant voluntarily and understandingly entered his pleas of guilty." 281 Ala. at 663, 207 So.2d at 415.

395 U.S. at 242–244, 89 S.Ct. at 1711–1713, 23 L.Ed.2d at 279–280. Later in *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the court summarized the new constitutional dimension added to guilty plea proceedings by *Boykin* as follows:

The requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized. * * * The new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily. This Court has not yet passed on the retroactivity of this new requirement. 397 U.S. at 747, 90 S.Ct. at 1468, 25 L.Ed.2d at 756, n. 4.

The court also spoke of the constitutional rights waived by the "grave and solemn act" of pleading guilty, and added, "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." 397 U.S. at 748, 90 S.Ct. at 1469, 25 L.Ed.2d at 756.

*Boykin's* reference to waiver involved in a confession is instructive. In a proceeding under rules established in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), a full and fair hearing must be conducted to assure a reliable determination of the voluntariness issue by the trial court. The confession must be excluded not only when its voluntariness has not been affirmatively established but also when a hearing under appropriate procedures has not been held to insure a full and adequate determination of the issue. *State v. Walton*, 247 N.W.2d 736, 739–740 (Iowa 1976). Similarly, *Boykin* teaches that a guilty plea cannot stand unless the record under review affirmatively shows it was entered understandingly and voluntarily. Like a *Jackson v. Denno* determination, the trial judge's decision must follow a hearing under appropriate procedures assuring the accuracy and reliability of the decision to accept the plea.

The effect of the *Boykin-Brady* standard is to replace the assumption that a defendant who enters a counseled guilty plea has done so voluntarily and intelligently with a requirement that the record affirmatively show the accused in fact entered the plea voluntarily and understandingly. Accordingly, the *Boykin* court rejected on due process grounds the argument of the government in *McCarthy* that an assumption the plea is intelligent arises from a statement by the lawyer that he advised his client of plea consequences. Until today, no court has failed to recognize *Boykin* constitutionalized *McCarthy* in this respect. This court's resurrection of the assumption that a counseled guilty plea is voluntary and intelligent is inconsistent with *Boykin* and constitutes a flagrant denial of due process.

Dispute exists whether *Boykin* constitutionalized a second aspect of *McCarthy*, the holding that unless the record in the original plea proceeding affirmatively shows the plea was voluntary and intelligent the accused must be permitted to plead anew. However, the dissent in *Boykin* did not doubt this was its effect. Moreover, although the Supreme Court has decided cases involving challenges to guilty plea

convictions since *Boykin* on records made in postconviction proceedings, all of those convictions occurred prior to *Boykin*. That court has not said since *Boykin* whether due process precludes the government from attempting to satisfy its burden under *Boykin* by introducing extrinsic evidence in a postconviction proceeding. Whether *Boykin* constitutionalized this aspect of *McCarthy* does not affect this dissent. However, it does affect the majority opinion because this court's new procedures would violate this additional requirement of due process.

Any doubt about the inconsistency of this court's position today with *Boykin* may readily be resolved when the court's opinion is compared with the dissenting opinion in *Boykin*. The lamentations in the *Boykin* dissent, repeated in the special concurrence in *Sisco*, are reiterated in today's opinion, and the procedure which it adopts is the procedure espoused by the dissent in *Boykin*. In that dissent, Justice Harlan complained that the defendant was not first required to allege and establish involuntariness or lack of understanding in a postconviction proceeding. The difference between the majority opinion and dissent in *Boykin* is also the difference between *Sisco* and today's opinion in this court.

*Boykin* holds due process demands that the record under review affirmatively show that the defendant's plea of guilty was voluntary and intelligently entered. No burden may be imposed on the defendant to prove his plea was defective. No presumption arises against the accused because he was represented by counsel. The burden to establish that the plea was voluntary and intelligent is upon the government. If the record under review is inadequate to make the necessary affirmative showing, the plea of guilty must be set aside and the defendant be permitted to plead anew.

Another pertinent decision of the Supreme Court is *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). In *Henderson* a defendant represented by competent counsel had entered a counseled guilty plea to a charge of second-degree murder without being informed that intent to cause the death of his victim was an element of the offense. No issue regarding misadvice by the trial court was presented in *Henderson* and, unlike the present case, the plea challenged in *Henderson* was entered prior to the decision of the Supreme Court in *Boykin*. However, applying pre-*Boykin* standards, while eschewing imposition of a requirement that the record disclose the defendant was aware of all elements of the offense charged, the court said, "Nevertheless, intent is such a critical element of the offense of second degree murder that notice of that element is required." *Henderson*, supra, 426 U.S. at 647, 96 S.Ct. at 2258, 49 L.Ed.2d at 115, n. 18. Certainly the element of intent is no less significant in the offenses involved in the present case than in the murder charge in *Henderson*.

It is true that in *Henderson* a factual hearing had been held in which the postconviction court found the element of intent had not been explained to the accused. Even if *Boykin* does not preclude giving the state an opportunity to save the conviction, no such factual hearing was held in the present case.

No tenable predicate exists for the majority's affirmance of the present convictions. The majority holding must rest on one of two grounds, both of which are contrary to *Henderson*. Because the record here does not affirmatively disclose defendant knew intent to be a requisite element of the two charges, the holding is either based on a theory that such knowledge is unnecessary or on a theory that such showing is unnecessary when the plea is counseled by a competent lawyer. However, *Henderson* says the knowledge is necessary when intent is a critical element of the offense, and it also says the showing of such knowledge is necessary even when the plea is counseled by a competent lawyer. On this latter point, Justice White noted in his concurring opinion:

 * * * [I]t is too late in the day to permit a guilty plea to be entered against a defendant solely on the consent of the defendant's agent—his lawyer. Our

cases make clear that the choice to plead must be the defendant's; it is he who must be informed of the consequences of his plea and what it is that he waives when he pleads, \* \* \* and it is on his admission that he is in fact guilty that his conviction will rest.

426 U.S. at 650, 96 S.Ct. at 2260, 49 L.Ed.2d at 117–118. Although the contrary view embraced by the majority in the present case finds support in the *Henderson* dissent, it is manifestly wrong under the majority holding.

II. *Today's holding is inconsistent with prior decisions of this court which implement Boykin.* In *State v. Sisco*, 169 N.W.2d 542 (Iowa 1969), this court adopted ABA Standards 1.4, 1.5, 1.6 and 1.7, Pleas of Guilty, as procedural requisites for acceptance of a guilty plea. In *Brainard v. State*, 222 N.W.2d 711 (Iowa 1974), we adopted ABA Standard 4.2(a)(ii) as an additional requisite. Today the court holds these standards, to some undisclosed extent, are no longer binding. In doing so the court adopts the position which was advocated in the *Sisco* special concurrence but which the specially concurring justices then recognized was inconsistent with *Boykin.*

We are not told that the court is overruling *Sisco* or *Brainard* or any of our other guilty plea cases. Nor are we told, if those cases have been overruled *sub silentio*, whether they have been overruled in their entirety or merely insofar as they relate to showing the plea is understandingly made. Whether they are overruled wholly or in part is a matter about which the bench and bar deserve to be informed. If more than seven years of case law is now to be swept away either in whole or in part, the court should say so.

Given the new constitutional doctrine announced by the Supreme Court in *Boykin*, this court was faced in *Sisco* with prescribing a method of implementation. A special committee of the American Bar Association, established through the initiative, among others, of present Supreme Court Justice Lewis Powell, had studied guilty plea procedures even before *Boykin* in an effort to devise minimum standards of criminal justice appropriate for adoption in all courts. The committee was comprised of many of the outstanding lawyers and judges in this country. In 1968–69 it was chaired by present Chief Justice Warren Burger.

The resulting ABA standards governing pleas of guilty adopted by this court in *Sisco* reflected the view of the American Bar Association as to what constituted minimum prerequisites in guilty plea proceedings. Indeed, adoption of the standards was a small step for this court to take because the procedures had previously been recommended by this court. In *Birk v. Bennett*, 258 Iowa 1016, 1023, 141 N.W.2d 576, 580 (1966), the court had said:

In some trial courts it is the practice of the trial judge to apprise a defendant about to enter a guilty plea of all of his rights and to determine the defendant has exercised his own judgment, after consulting with counsel, to enter such plea. We commend this practice to all trial judges.

See also *State v. Martin*, 243 Iowa 1323, 55 N.W.2d 258 (1952); *State v. Kellison*, 232 Iowa 9, 4 N.W.2d 239 (1942).

We observed in *Sisco* that the ABA standards adopted there were "in essence, an exemplification of Rule 11, Federal Rules of Criminal Procedure." 169 N.W.2d at 548. As explained then and reiterated often subsequently, the effect of *Boykin* was to require a record to support a guilty plea conviction similar to that which would be developed in federal courts under Rule 11, as interpreted by the Supreme Court in *McCarthy.*

The *Sisco* court held:

[A] sentencing court may not abrogate or delegate to anyone, including attorney for the accused, the duty to determine defendant's knowledge of the charge, appreciation of legal consequences of a guilty plea, whether it is voluntarily entered, or existence of facts supporting it. 169 N.W.2d at 548.

After *Boykin* was decided, as explained in *Brainard*, the drafters of the ABA standards and United States Advisory Committee on Federal Rules of Criminal Procedure devised additions to the standards to implement the *Boykin* holding. The requirement added to *Sisco* by *Brainard* is the requirement agreed on by the American Bar Association and separately, through amendment of Rule 11, by the Supreme Court and Congress. In adopting ABA standards in *Sisco* and *Brainard*, we did not merely "[seize] upon a colloquy between the trial judge and the accused as the tool for demonstrating understanding." As the cases say, we prescribed the procedures in an effort to assist the court receiving the plea, and this court upon review, to ascertain whether the plea is voluntary and intelligent. See, e. g., *Brainard,* supra, 222 N.W.2d at 713. Nor do the requirements "[proceed] on the highly doubtful premise and accused can thoughtfully assimilate and act upon the information given him * * * in the courtroom." The purpose was never to establish a forum for the trial court to educate the defendant in the law or supplant the accused's lawyer. We have said many times the colloquy is only complementary to the services of counsel. The procedures presuppose the accused is represented by competent counsel and fully advised by him. "The court's inquiry is intended to supplement but not supplant advice of counsel." *State v. Rhodes,* 243 N.W.2d 544, 545 (Iowa 1976). Like the Supreme Court, we have consistently refused to extend the trial court's duty of inquiry into issues which inhere in the wisdom of the plea. "The trial court is not required to inquire into the wisdom of the plea and may assume competent counsel has explored that issue with the defendant." *Id.* at 545. See *Tollett v. Henderson,* 411 U.S. 258, 265–267, 93 S.Ct. 1602, 1607–1608, 36 L.Ed.2d 235, 242–243 (1973); *McMann v. Richardson,* 397 U.S. 759, 769, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763, 772 (1970).

In failing to recognize either the necessity or real purpose of the *Sisco-Brainard* requirements, the majority admittedly is less troubled in casting them aside. Nevertheless, this does not make them less necessary nor their purpose less real. Because they are rooted in due process, they may not be rejected without substitution of equivalent measures. Having disregarded the premise of the requirements, the court makes no such substitution here.

As recently as February 16, 1977, this court said, without dissent, that *"Sisco's* requirements are in part mandated by the Constitution. * * * [citations] The constitutional due process clause precludes acceptance of a guilty plea where the record does not show defendant voluntarily waived those rights lost by the plea, including the right to trial by jury, the rights against self-incrimination and the right to confront witnesses." *State v. Barrett,* 250 N.W.2d 31, 32–33 (Iowa 1977). In *Barrett* the court also recognized the necessity of an on-the-record colloquy in guilty plea proceedings, as a matter of due process. *Id.* We are not told what caused today's sudden metamorphosis. I think the court was right in February and is wrong today.

III. *The record in this case cannot be said affirmatively to show the defendant understood the charges when the trial judge misinformed him of their nature.* At the outset in this case we are told that the trial judge's mistaken advice to defendant regarding the nature of the two offenses did not vitiate the two guilty pleas. This is true, the court says, "[n]otwithstanding language in some of our prior opinions." Then, in division III of the opinion, the court holds, without supporting authority, that defendant must have understood the nature of the charges, apparently on three grounds: (1) defendant's lawyer told the court he did not know of any reason the pleas should not be accepted; (2) the record does not affirmatively show the lawyer failed in his professional responsibilities; and (3) defendant's lawyer is able and experienced. In other words, the court bases its affirmance of the convictions on the theory defendant must be assumed to have understood the nature of the charges, despite the mistakes of the trial court in attempting to explain them to him, because he was represented by competent counsel who the record

does not show failed in his professional obligations to defendant. The prior opinions of this court whose "language" might seem inconsistent with this result are never identified.

As a matter of fact, the holding of the court is not merely contrary to language in prior opinions of this court; it flatly contradicts their holdings. And, as previously pointed out, it contradicts several decisions of the United States Supreme Court.

Twice on the record the trial judge expressed his annoyance at having to engage the defendant in an on-the-record colloquy to ascertain that the tendered guilty pleas were voluntary, understandingly made and accurate. This recalcitrance may account for his carelessness in identifying the nature of the charges.

In explaining the breaking and entering charge the judge elected to state its elements. In doing so he said:

> The essential elements of the charge to which you are pleading are as follows: that the occurrence took place on or about June 25, 1974; that it took place in Scott County, Iowa; and that you broke and entered the Five Cities Tool Company at 723 Schmidt Road. By break and enter, doesn't mean you took a sledge hammer and broke in a window or door. If you simply opened the door without authority and went into the premises, this, in law, is breaking and entering. Do you understand that?

Of course, as the majority admits, this statement is wrong. The offense of breaking and entering is not complete with a forcible entry to the premises; it must be accompanied by an intent to commit a public offense therein. The offense consists of breaking and entering with an intent to commit a crime in the place entered. *State v. Berenger*, 161 N.W.2d 798 (Iowa 1968).

In discussing the separate charge of operating a motor vehicle without the owner's consent, the judge, in a statement omitted from the majority opinion, said:

> The essential elements of that crime are that the incident occurred on or about June 17, 1975 and that it occurred in Scott County, Iowa, and that you operated or drove the car without the consent of the owner of the car.

This statement is also wrong. The offense of operating a motor vehicle without the owner's consent includes an element of criminal intent. Although this element is not expressed in Code § 321.76, which states the offense, this court has held the State may not establish the offense without proof the defendant had criminal intent. *State v. Drummer*, 254 Iowa 324, 117 N.W.2d 505 (1962).

Therefore the record affirmatively shows the judge misinformed the defendant regarding the nature of the two offenses.

Instead of confronting and responding to this problem, the majority identifies and responds to a problem which is not presented.

No issue exists here as to whether the judge was obliged to identify the elements of these two offenses for the defendant. Yet that is the issue addressed by the majority opinion. That issue if governed by the general principle that we will not reverse a judgment based on a guilty plea for failure of the trial judge to explain the elements of the offense if under the entire record it is apparent the defendant did understand the nature of the charge. *State v. Hansen*, 221 N.W.2d 274, 276 (Iowa 1974). Indeed, we have said the extent of the trial judge's explanation and inquiry must vary with the circumstances of each case, including the complexity of the charge and other factors. For example, although not pertinent here, when the indictment or information charges the offense in language containing the elements no additional explanation may be required. *State v. Speer*, 245 N.W.2d 331 (Iowa 1976). Or the name of the offense may be sufficiently descriptive of its nature to make further explanation unnecessary in an appropriate case. *State v. Watts*, 225 N.W.2d 143 (Iowa 1975). In its haste to characterize the prior holdings of the court as requiring a rigid colloquy between the judge and the accused, the majority has overlooked the fact no pat-

terned colloquy has ever been required relating to the judge's duty to ascertain on the record that the accused understands the nature of the charge.

It may be that the judge in this case undertook a duty he did not have when he chose to delineate the elements of the two offenses for the defendant. The majority appears to base its holding on this point, but this is not the issue presented for decision.

Here, assuming the judge was not obligated to do so, he nevertheless proceeded to state the elements of the offenses. In doing so he omitted the *mens rea* element required in each offense. The issue then is whether the record can be said affirmatively to show the defendant understood the charges when the trial judge misinformed him of their nature.

Three recent decisions of this court are squarely on point. They are *State v. Wall*, 239 N.W.2d 548 (Iowa 1976); *State v. Buhr*, 243 N.W.2d 546 (Iowa 1976), and *Hoskins v. State*, 246 N.W.2d 266 (Iowa 1976).

*Wall* was an appeal from a guilty plea conviction on a charge of false uttering of a check under Code § 713.3. The trial judge who received the plea sought to enumerate the elements of the offense. In doing so he omitted the element that the defendant not knowingly have "any arrangement, understanding, or funds with the bank * * * upon which the check * * * is drawn sufficient to meet or pay the same." In these circumstances, which are analogous to those in this case, this court said:

> It is no answer to say the court was not *required* to discuss each element of the offense in order to determine defendant's understanding of the crime. *State v. Hackett*, 201 N.W.2d 487, 490 (Iowa 1972). In this instance trial court, for defendant's instruction, *did* set out to "tick off" the elements of the offense which the State was required to prove and omitted one of the most important. An affirmative answer relating to defendant's understanding based on that court-administered misadvice should not support a conviction. 239 N.W.2d at 549.

On this record the court found defendant's understanding of the nature of the charge did not appear. The case was reversed and remanded with directions to permit the defendant to plead anew. One justice dissented.

*Buhr* was an appeal from two guilty plea convictions. One was for robbery with aggravation in violation of Code § 711.2. As in *Wall* and as in the present case, the trial judge proceeded to list the elements of that offense. In doing so he omitted any reference to the element of the accused's intent, if resisted in the robbery, to kill or maim his victim. In reversing this conviction we said:

> The trial [judge] here proceeded to "discuss the attributes" of the offense just as the court proceeded to "tick off" the elements of the offense in *Wall*. Here, as in *Wall*, the advice was incomplete. The court omitted any reference to one of the most important elements, and one which distinguishes robbery with aggravation, which carries an indeterminate twenty-five year prison term, from the lesser included offense of robbery without aggravation, which carries an indeterminate ten-year prison term. * * * The record here tends to establish defendant's understanding of a charge of robbery, but it does not establish his understanding of robbery with aggravation. 243 N.W.2d at 550.

No one dissented in *Buhr*.

*Hoskins* was an appeal from denial of postconviction relief in which a guilty plea conviction for false drawing and uttering of a bank check in violation of Code § 713.3 was challenged. The controlling issue was the adequacy of the record in the guilty plea proceeding to show defendant's understanding of the charge. The trial judge described the offense to the defendant as writing a check when he "didn't have the funds with which to cover it." We pointed out that a § 713.3 offense is "quite complex, including the elements of intent to defraud and failure to have an understanding or arrangement at the bank to cover the check. * * * Neither element was ever

explained to this petitioner." 246 N.W.2d at 268. We held the record deficient because it failed to demonstrate defendant's understanding of the charge and reversed the case to permit the defendant to plead anew. No one dissented in *Hoskins*.

Perhaps *Wall, Buhr* and *Hoskins* are overruled by today's opinion. At least it is clear they are not being followed. Moreover, it is also clear the majority opinion does not tell us what rule should be applied when a trial judge misadvises a defendant as to the law. The effect of the present opinion is to say if the accused is represented by competent counsel it will be conclusively presumed he has been correctly advised by his lawyer and, in addition, he will ignore misinformation from the judge. Even though future defendants are accorded an opportunity to attack this presumption by motion in arrest of judgment, this defendant is denied that opportunity. Even as to future defendants, it seems likely from this holding that the proceeding on a motion in arrest of judgment will be a hollow formality.

If the intent of the court is to overrule *Wall, Buhr* and *Hoskins*, it should say so for at least two reasons. First, the stability of our system of precedents and the predictability of the law are undermined when recent holdings are overruled *sub silentio*. Second, because the impact of a decision changing the rules governing the acceptance of guilty pleas is far reaching, the failure of the court to identify and specify which of our prior cases are no longer precedent will cause much more confusion and disarray than the new rules are envisioned as eliminating. We will surely end up with the worst of both worlds.

In affirming these convictions on the present record, the court espouses and adopts the basis of the dissent in *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). This is not only novel constitutional doctrine; it violates our duty to follow federal constitutional interpretations of the Supreme Court.

The majority's error is compounded by the fact the record reflects not just lack of knowledge on the part of the defendant but misadvice by the trial court which would reasonably lead the accused to believe intent was *not* a required element in either of the offenses charged. If the defendant cannot believe advice from the judge, whose advice should he believe? If he is to exercise selectivity in deciding what advice to believe, by what rules is he to do so? Was this 19-year-old high school dropout supposed to know the judge was mistaken?

The majority holding depends on the assumption rejected by the Supreme Court in *Boykin* that it is sufficient to show the accused was represented by a lawyer who presumably gave him correct advice. It is the defendant's awareness, not his lawyer's, which is at issue and which must be affirmatively demonstrated. No such demonstration exists in the present record. Accordingly, I believe defendant should be permitted to plead anew.

IV. *Pleas which result from plea bargaining are not subject to lesser scrutiny.* The fact the pleas in this case resulted from plea bargaining is alluded to by the majority as if this factor supports the assumption that defendant understood the nature of the charges, despite the erroneous explanations by the judge. This reasoning ignores the realities of plea bargaining explored in our prior cases. See *Wallace v. State*, 245 N.W.2d 325 (Iowa 1976), and citations.

Although plea bargaining is controversial, it has been approved by the Supreme Court and this court. See *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *State v. Hansen*, 221 N.W.2d 274, 277 (Iowa 1974). Nevertheless, as these cases demonstrate, it brings problems with it. The availability of the process creates a risk that an innocent person will be tempted to plead guilty. In addition, plea bargains are usually struck in bilateral discussions between the prosecutor and defense counsel without direct participation by the defendant. See Note, *Plea Bargaining and the Transformation of the Criminal Process*, 90 Harv.L.Rev. 564 (1977).

The Supreme Court has shown its awareness of these problems, recently allowing

collateral attack of a North Carolina guilty plea conviction where the trial court's colloquy did not disclose the existence of a plea bargain which the postconviction petitioner contended was not honored. *Blackledge, Warden v. Allison,* —— U.S. ——, 97 S.Ct. 1621, 52 L.Ed.2d 136 (decided May 2, 1977). The Court commended North Carolina for amending its rules to require a complete record in the plea proceeding, adding "But the salutary reforms recently implemented by North Carolina highlight even more sharply the deficiencies in the record before the District Court in the present case." *Id.* at ——, 97 S.Ct. at 1632.

The special problems introduced by plea bargaining underscore the imperative that the plea-taking procedure affirmatively show the defendant knows what he is doing when he tenders his guilty plea. As recognized in *Wallace v. State,* supra, 245 N.W.2d at 326, this is why we adopted ABA Standard 1.5, Pleas of Guilty, in *State v. Sisco,* 169 N.W.2d 542 (Iowa 1969).

V. *The court attributes a promise to Sisco and Brainard which was never made and should not be made.* The majority says, "We have failed to realize the promise of *Sisco* and *Brainard* to reduce the number of guilty plea appeals." We are not told where in *Sisco* and *Brainard* such promise is made, nor are we told why it is necessary, desirable or permissible to deny due process of law in order to reduce appellate volume.

*Sisco* and *Brainard* cite *McCarthy v. United States,* supra, for its explanation of the goals of Rule 11, Federal Rules of Criminal Procedure. In quoting from *McCarthy,* the majority opinion has omitted part of the Supreme Court's statement and perhaps as a result missed its meaning. *McCarthy* was decided without articulation of the due process requirements imposed when *Boykin* was decided two months later. The statement of goals of Rule 11 in *McCarthy* was in response to a government argument, like that made in the majority opinion here, that the trial court should assume that a counseled defendant was entering his guilty plea with a complete understanding of the charge against him. In response to this contention, the Supreme Court said:

We cannot accept this argument, which completely ignores the two purposes of Rule 11 and the reasons for its recent amendment. First, although the procedure embodied in Rule 11 has not been constitutionally mandated, it is designed to assist the trial judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. Second, the Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination. *Thus, the more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas.*

\* \* \* By personally interrogating the defendant, not only will the judge be better able to ascertain the plea's voluntariness, but he will also develop a more complete record to support his determination in a subsequent post-conviction attack. \* \* \* (Italics added). 394 U.S. at 465–466, 89 S.Ct. at 1170–1171, 22 L.Ed.2d at 424–425.

The italicized sentence is the one which is quoted in truncated form in the majority opinion in the present case. The statement refers to collateral attack proceedings, not appeals. Furthermore, the only promise it makes is a better record upon postconviction attack to permit more expeditious disposition. This modest purpose is a far cry from a promise to reduce appeals attacking guilty plea convictions. Asserting such a promise was made and not kept makes it easier to say the rules should be changed, but it places those changes on a false predicate.

I see no justification for the apparent desire of the majority to suppress appeals from guilty plea convictions. Our criminal justice system would quickly grind to a halt without guilty pleas. Guilty plea convictions account for the vast majority of all convictions. They should not be discouraged. More important is the fact they

must be voluntary and intelligent. Because of this they should be surrounded by assurances of procedural fairness. They frequently result from plea bargaining which is plagued by risks because of the sensitive and serious rights being bargained away. Human liberty is at stake. A guilty plea is "a grave and solemn act to be accepted only with care and discernment * * *." *Brady v. United States,* supra, 397 U.S. at 748, 90 S.Ct. at 1468, 25 L.Ed.2d at 756.

Are guilty plea cases somehow less important than those where convictions are obtained after trial? A defendant convicted by guilty plea is not likely to think so. Nor does the Constitution make any such distinction. As a matter of fact, appeals from guilty plea convictions take on a special dimension because, unlike convictions after trial, they depend for their validity on the defendant voluntarily and intelligently relieving the State of its obligation to prove his guilt by convicting himself.

The people did not except guilty plea convictions in defining our duties of review in the Iowa Constitution. See Ia.Const. Art. V § 4. Nor has the legislature created any such exception. Moreover, the legislature has signified its priorities by requiring criminal appeals to be given precedence over all other business. § 793.12, The Code.

The judiciary is not a prosecutorial agency. It exists to apply the rule of law in controversies brought to the courts. An assumption or belief that guilty plea cases are less worthy of review than other cases is at best unjustified and at worst an abdication of our constitutional duty.

VI. *The court inaccurately characterizes our experience since Sisco.* From the language of the majority opinion, one might easily imagine we have been deluged with guilty plea cases and have been compelled by the hypertechnicality of our rules to overturn vast numbers of presumably valid convictions. This state's experience since *Sisco* was recently discussed in Bishop, *Guilty Pleas in the Northern Midwest,* 25 Drake L.Rev. 360 (1975). The author is a Michigan prosecutor who has studied and written widely on the subject of guilty

pleas. After discussing our cases, Bishop writes:

The northern Midwest * * * is not too favorable a forum for defendants who plead guilty, then hope for appellate or postconviction absolution, by whatever route or routes available. Id. at 389.

He supports his observation by statistics.

Compliance by trial judges with the *Boykin-Sisco-Brainard* procedures for ascertaining whether a plea of guilty is understandingly made is reflected in the small number of reversals for failure of compliance in the past two calendar years. Four reversals on this basis occurred in reported cases in 1975 and five in 1976. Six cases were reversed on this basis in unreported decisions. These fifteen decisions in a two-year period must be viewed within the perspective of the huge volume of guilty plea cases handled in the district court.

Judges and magistrates disposed of 22,219 indictable offenses in 1975 and 24,664 in 1976. Of the 1975 cases, 18,629 were disposed of without trial; of the 1976 cases, 20,040 were disposed of without trial. If national studies on this subject have validity, the majority of the non-trial dispositions were based upon guilty plea convictions. See, e. g., *President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society* 134 (1967) (stating up to 90 percent of convictions result from guilty pleas).

Against this background, it is obvious Iowa trial judges are meeting the prescribed standards in taking guilty pleas with very few exceptions. Surely these exceptions do not establish the inadvisability of the standards.

Moreover, of the 15 reversals in 1975 and 1976, only one was an appeal from denial of postconviction relief, *Hoskins v. State,* 246 N.W.2d 266 (Iowa 1976), discussed previously herein. This helps demonstrate that adequate records in original proceedings forestall successful postconviction collateral attack.

"The procedure outlined in *Sisco* is designed to eliminate any need to resort to a

later fact finding proceeding in this highly subjective area as to defendant's understanding when he entered his plea of guilty." *State v. Reppert*, 215 N.W.2d 302, 306 (Iowa 1974). Our experience since *Sisco* verifies that there is no adequate substitute for demonstrating the voluntary, intelligent and accurate nature of the plea at the outset.

VII. *The court ascribes characteristics to the Sisco-Brainard procedures which do not exist.* Only a reading of our cases will determine whether *Sisco* and *Brainard* require a "rigid colloquy" or "guilty plea litany" where "form has increasingly taken control over substance." *Sisco* and *Brainard* both adjure any such requirement. We are not told by the majority which prior cases it would decide differently, putting "substance" over "form." Most of our decisions since *Sisco* have been unanimous, many written by members of today's majority. Recently we went quite far to affirm a guilty plea conviction where the judge made a mistake, which we found to be harmless error, in explaining a charge to a defendant. See *State v. Ceaser*, 245 N.W.2d 510 (Iowa 1976). Furthermore, we have repeatedly refused to extend our rules to require the record to show more than is commanded by the Supreme Court. See, e. g., *State v. Barrett*, 250 N.W.2d 31 (Iowa 1977); *State v. Rhodes*, 243 N.W.2d 544 (Iowa 1976); *State v. Warner*, 229 N.W.2d 776 (Iowa 1975).

I question whether the *Sisco-Brainard* procedure is likely to become "rigid" or a "litany" when employed by trial judges who take seriously their duty to be assured that a defendant knows what he is doing when he voluntarily subjects himself to the obloquy, personal devastation and severe penalties which accompany conviction of serious crime.

Moreover, the response to the problem, if it exists, ought to be to improve the procedure rather than abandon it. In recently adopting procedures like those which this court required before today, the Massachusetts Supreme Judicial Court appropriately commented as follows:

It has been suggested that to insist on an affirmative showing on the record at the time of sentence is not truly a safeguard of defendant's rights because it leads merely to a mechanical performance in which the judge and the defendant recite formulary words. "The defendant, believing correctly or incorrectly that he will receive a 'bargain' in exchange for his guilty plea, is instructed to, and does, claim total understanding of the charges against him and affirm the total absence of any bargain when questioned by the trial judge." *United States v. Frontero*, 452 F.2d 406, 411 (5th Cir. 1971). But to the extent that this observation may represent truth instead of caricature, what it suggests is not the downgrading of reliance on a contemporaneous record and the encouragement of postconviction proceedings, but rather a continuing effort on the part of trial judges, with the help of counsel, so to direct their questions as to make them a real probe of the defendant's mind. We need not repeat what was said in *Commonwealth v. Morrow*, 363 Mass. 601, 296 N.E.2d 468 (1973), about the desired character and scope of the questioning. It is not to become a "litany" but is to attempt to give evaluation of whether the plea has been sufficiently meditated by the defendant with guidance of counsel, and whether it is not being extracted from the defendant under undue pressure. *Commonwealth v. Foster*, Mass., 330 N.E.2d 155, 159–160 (1975).

I do not think the majority's characterization of the *Sisco-Brainard* procedures can be documented but, instead, is simply a manifestation of disagreement with the substantive holding in *Boykin*.

VIII. *The procedures adopted by the majority are based on a misdirected if not mistaken view of the ethical performance of lawyers in guilty plea proceedings, penalize the accused for the supposed misconduct of counsel, substitute a colloquy with counsel for a colloquy with the accused, and foreshadow litigation in which the memory of the lawyer will be the principal issue.*

The majority's accusation that this defendant's lawyer and other defense lawyers "can with impunity" base appeals on errors in guilty plea proceedings "which they recognize but failed to disclose at the time the plea was taken" is a very serious one. We noted in *State v. Williams*, 224 N.W.2d 17, 19 (Iowa 1974), that such conduct would be a violation of professional responsibility.

It is a paradox that the majority in this case lauds the competency of defendant's lawyer, presumes outstanding performance of his professional obligations to defendant, and at the same time suggests he unethically trapped the trial judge into error by failing to call the error to his attention when it occurred. Then after suggesting the lawyer was guilty of misconduct, the court penalizes the client.

The resulting limitation of the trial judge's duty in a plea proceeding and curtailment of the accused's right to appellate review ignore the fact the plea of guilty is that of the defendant, not his lawyer. It is the defendant's awareness which is at issue in the plea proceeding, not that of the lawyer. If "it is too late in the day to permit a guilty plea to be entered, against a defendant, solely on the consent of the defendant's agent—his lawyer." *Henderson v. Morgan*, 426 U.S. at 650, 96 S.Ct. at 2260, 49 L.Ed.2d at 117, it is certainly too late in the day to punish the defendant for his lawyer's alleged misconduct.

If the lawyer is guilty of misconduct, a complaint should be made with the committee this court has established for that purpose. Court rule 118.

In addition, the majority's view also ignores the fact a competent lawyer, like a competent judge, may in good faith make a mistake. The lawyers in *Henderson* were observed and presumed by the Supreme Court to be competent. In the present case, the record affirmatively shows the judge misadvised the defendant. Are we to presume defendant's lawyer could not have noted the mistake until too late? Why does the court presume the judge acted in good faith but was wrong while the accused's lawyer knew better and acted in bad faith?

In the present case the record shows defendant's lawyer was aware of his obligation under *Williams*. At the sentencing he interrupted the judge to correct him in his statement regarding the possible sentence on the OMVWOC charge. After doing so he said, "I wouldn't have raised it except the Supreme Court of Iowa said it's duty of counsel to help the Court—."

I do not read bad faith into this lawyer's conduct. But if he acted unethically, this appeal is neither the appropriate forum, nor the decision the proper means, for disciplining him. Nor should we change our rules in guilty plea proceedings because of unsubstantiated suppositions about attorney misconduct. ·

The procedures adopted by the court today, apparently so motivated, encourage the substitution of a colloquy with the lawyer for a colloquy with the accused. Hereafter the lawyer may be asked if he explained the charge and plea consequences to the defendant and, if he says he did, the *defendant's* awareness of these matters is deemed established.

The defendant may obtain relief only by claiming his unawareness in a motion in arrest of judgment. The defendant who is truly unaware is hardly likely to become aware without advice. But where in that interim will he be alerted to the necessity of obtaining such advice? For most defendants, the relief provided by the majority's new procedures will be wholly illusory. On the other hand, the defendant who is aware but has second thoughts about his guilty plea will have the necessary knowledge coupled with incentive to move in arrest of judgment on false grounds.

The majority's recommended procedures will have the inevitable effect of putting many lawyers and clients on trial as adversaries. In the case of a client who proceeds in bad faith, the lawyer's word and memory will be pitted against that of the defendant. Busy lawyers will simply not remember all that has transpired with their clients, and will say so. Assuming the majority opinion will be ineffective in foreclosing postconviction relief in federal court, the lawyer may

be called upon to recount his advice months or years after the conviction.

Procedures required before today are designed to forestall "the spin-off of collateral proceedings that seek to probe murky memories." *Boykin*, supra, 395 U.S. at 244, 89 S.Ct. at 1713, 23 L.Ed.2d at 280. No evidence exists in the records of appeals to this court that this problem exists under the *Sisco-Brainard* implementation of *Boykin*.

The new procedures will subvert rather than serve the proper purposes of a guilty plea proceeding.

IX. *State v. Reppert, 215 N.W.2d 302 (Iowa 1974), stands for a proposition contrary to that for which it is cited in the majority opinion.* The majority asserts that *Reppert* is precedent for procedures releasing the trial judge from his duty to address the defendant personally in a plea proceeding to ascertain whether the plea is voluntary, intelligent and accurate. In fact, the court in *Reppert* reversed two convictions because of the trial judge's failure to advise or question the defendant about the maximum penalties for those charges. A third conviction was affirmed on the ground the judge substantially complied with *Sisco* when he asked the defendant if he knew what the penalties were on that charge, and the defendant said he did. This court held defendant's response made further inquiry on the subject unnecessary. As long as the accused's awareness of the penalties was shown on the record, it did not matter how he had learned of them.

It is incongruous that the majority today rejects the *Sisco* mandate on the purported authority of a case in which the *Sisco* requirements were emphatically enforced. It is also incongruous that a case which demonstrates we have emphasized substance over form in reviewing compliance with *Sisco* should be cited as a basis for disapproving *Sisco* because it prescribes a "rigid colloquy."

The court in *Reppert* said:

Before accepting a plea of guilty the trial court is required to address the defendant personally to determine that the guilty plea is made voluntarily with an understanding of the nature of the charge and of the consequences of the plea. This procedure contemplates disputes as to defendant's understanding and the voluntariness of his acts are to be eliminated at the outset. There is no adequate substitute for demonstrating in the record at the time the plea is tendered defendant's understanding of the nature of the charge made against him. [citations] * * *.

The procedure outlined in *Sisco* is designed to eliminate any need to resort to a later fact finding proceeding in this highly subjective area as to defendant's understanding when he entered plea of guilty. 215 N.W.2d at 306.

*Reppert* is wholly inconsistent with today's holding.

X. *Today's decision will result in waste of judicial resources, substantial additional public expense, and a proliferation of postconviction litigation.* It is illogical to suggest that somehow judicial resources and the public treasury will be conserved if we do not require judges to make an adequate record prior to acceptance of guilty pleas. Apart from the constitutional issues, this is not the way to forestall subsequent litigation. Even if the court succeeds in closing the doors of state courts to appellate review or postconviction actions involving guilty plea convictions, it has no control over the federal courts. *Rinehart v. Brewer*, 421 F.Supp. 508, 510–511 (S.D.Iowa 1976). In recently adopting procedures far more stringent than the requirements of *Sisco* and *Brainard*, the West Virginia Supreme Court of Appeals aptly observed, "There must be some end to litigation, and the proper way to effectuate this salutary result is to do everything right the first time." *Call v. McKenzie*, 220 S.E.2d 665, 669 (W.Va.1975).

After today every guilty plea will involve a proceeding in which the plea is entered and the potential for subsequent proceedings in which the issue to be tried will be whether the defendant acted voluntarily and intelligently in entering the plea. This is not the way to foster judicial efficiency, economy or justice.

XI. *The procedures adopted by the court today are inconsistent with a rule of criminal procedure adopted by the legislature.* The legislature has enacted a revision of the criminal code effective January 1, 1978, which includes a rule of procedure governing the taking of guilty pleas. As amended during the current legislative session, Ia.R. Crim.P. 8(2)b and c provides:

b. PLEAS OF GUILTY. The court may refuse to accept a plea of guilty, and shall not accept such plea without first addressing the defendant personally and determining that the plea is made voluntarily and intelligently and has a factual basis.

Before accepting a plea of guilty, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

(1) The nature of the charge to which the plea is offered.

(2) The mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered.

(3) That the defendant has the right to be tried by a jury, and at such trial has the right to assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself.

(4) That if the defendant pleads guilty there will not be a further trial of any kind, so that by pleading guilty the defendant waives the right to a trial.

c. INQUIRY REGARDING PLEA AGREEMENT. The court shall also inquire as to whether the defendant's willingness to plead guilty results from prior discussions between the attorney for the state and the defendant or the defendant's attorney. The terms of any plea agreement shall be disclosed of record as provided in rule nine (9), subsection two (2) of the rules of criminal procedure.

The rule is similar to rule 11, Fed.R.Crim.P. It is also like rule 10–1.3, *ABA Pattern Rules of Court and Code Provisions* (1976). The rule includes the substance of the *Sisco-Brainard* procedure.

Ia.Const. Art. V § 14 charges the legislature with a duty "to provide for a general system of practice in all the Courts of this State." We recognized in *Iowa Civil Liberties Union v. Critelli*, 244 N.W.2d 564, 569 (Iowa 1976), that this provision deprives the judiciary of power to adopt rules of criminal procedure inconsistent with legislation.

The procedures adopted by the court today conflict with rule 8(2)b and 8(2)c. On January 1, 1978, this court's rule must give way to the legislature's rule. Assuming the court will continue to abide by the recent pronouncement in *Critelli*, we will be in the confusing situation of discarding procedures used for more than seven years, substituting procedures which can be used for only a few months, and then returning to the procedures which were put aside. The complexity of modern life has led to an explosion of substantive and procedural law changes. Today's abrupt and short-term change in criminal procedure will increase the burden on those who work in our criminal justice system. No sooner will they learn of the change and begin to adjust to it when they must abandon it and return to the old procedures. The stability and predictability of our rules and system of precedents will be adversely affected. Time and judicial resources would be better occupied in efforts to fine tune the implementation of present rules in preparation for the trauma of other changes included in the new criminal code.

Moreover, the legislature was fully advised of the position of the court majority on this issue and rejected it. We have deferred to the legislature in matters of criminal procedure in the past. See *State v. Griffin*, 257 Iowa 852, 135 N.W.2d 77 (1965). This is an appropriate occasion to do so again.

I think it is poor policy for the court to reject procedures which we have followed for seven years and which we must follow again in seven months.

XII. *The court's new procedures impose an unauthorized barrier to review of guilty plea convictions which violates our duty to protect and enforce federal constitutional rights.* We are obliged by oath to support the Constitution of the United States as well as the Constitution of Iowa. See § 63.-10, The Code. The fact we do not have the final say on the meaning of the federal constitution does not give us license to abdicate to the federal courts our responsibility to enforce it. In the present case, the majority has devised procedures which have that effect.

The court's new procedures authorize the taking of a guilty plea on a record which does not affirmatively demonstrate that the plea is voluntary, intelligent and accurate. The majority extends this authority on the constitutionally untenable premise the presence and assurances of counsel are sufficient. But for those instances in which an accused claims his plea was invalid, the court has fashioned a narrow procedure by which he may assert and presumably bear the burden of pleading and proving by extrinsic evidence his plea was *not* voluntary, intelligent and accurate. Resort to that procedure is made a condition precedent to appellate review. No other means of challenging the conviction is provided. An accused who does not find the eye of the needle and successfully crawl through it is precluded from state-court relief.

The condition precedent imposed by the court is not only inconsistent with the substantive holding of *Boykin*, as previously pointed out, but erroneously imposes a procedural barrier to the vindication of federal constitutional rights in our courts.

I think the court's new approach is wrong on four grounds. First, as previously shown, the presence and assurances of counsel at the original plea proceeding do not establish the validity of the plea. Second, under *Boykin* the State bears the risk of non-persuasion on the issue of the necessary affirmative showing of validity; it may not be shifted to the accused. Third, the procedure infringes an accused's statutory rights to appeal and to seek postconviction relief. Fourth, the procedure is inconsistent with federal waiver standards which apply to federal claims asserted in state courts. Only the third and fourth grounds have not previously been discussed.

Until today the right of appeal in Iowa criminal cases was governed by statute. The applicable statute says, "Either the defendant or state may appeal." § 793.1, The Code. In today's decision, under the guise of rule-making, the court has judicially amended the statute by carving out an exception to preclude appellate review as a matter of statutory right of guilty plea convictions at least in instances when the appeal challenges the plea as unintelligent. Under the majority holding, an accused is deemed by judicial fiat to have forfeited forever his right to attack the plea unless he first asserts his contention in a motion in arrest of judgment. Not only does he lose his right to appellate review, his procedural default purports to bar collateral postconviction attack. § 663A.8, The Code; *Horn v. Haugh*, 209 N.W.2d 119 (Iowa 1973). Thus the court's new rule has abridged what previously were statutory rights of defendants. No statutory right of other defendants to challenge their convictions is restricted in this manner. The court cites no Iowa authority for singling out guilty plea defendants for disparate treatment. None exists.

The narrowness of the procedural remedy fashioned by the court can readily be seen. Under the new criminal code, a motion in arrest of judgment must be filed before judgment and "within six days after finding, plea, or verdict of guilty." Acts 66 GA ch. 1245, Ia.R.Crim.P. § 1301, rule 23(3)(b). Therefore, when that provision becomes effective, a defendant who unintelligently enters a guilty plea must somehow be alerted to the deficiency within six days or less of his plea. Otherwise his federal due process right not to be convicted on an unintelligent plea has no chance of being vindicated in state court. A longer period is provided in present Code § 788.1, but a default brings the same result.

Imposition of this procedural roadblock is inconsistent with federal waiver standards. The right not to be convicted by an involuntary or unintelligent plea of guilty is a federal constitutional right. A state court should not declare it waived by reason of a procedural default unless the default constitutes waiver under federal standards. If it does, "a federal court must still inquire whether the procedural bypass was a knowing and deliberate waiver under federal standards." *Losieau v. Sigler*, 421 F.2d 825, 828 (8 Cir. 1970).

An accused will be able to be heard on the merits of his claim in federal court unless the State pleads and proves there that he deliberately bypassed available state court remedies. Deliberate bypass cannot be proven unless a knowing and intentional waiver is shown. *Fay v. Noia*, 372 U.S. 391, 438–439, 83 S.Ct. 822, 848–849, 9 L.Ed.2d 837, 868–869 (1963). A defendant who claims he unintelligently entered a guilty plea under this court's new procedures is likely to have little trouble defending against a claim of deliberate bypass based on a failure to file a motion in arrest of judgment in state court within the time provided. See *Rinehart v. Brewer*, 421 F.Supp. 508, 510–511 (S.D.Iowa 1976).

As a result, federal courts will sit in review of state court guilty pleas because this court refuses to apply federal standards in establishing procedural rules governing review in state courts. Our duty to assure and vindicate federal constitutional rights is no less than that of federal judges. State and federal judges are equally bound by the federal constitution. Today's decision is a denial of that duty.

XIII. *The new procedures leave Iowa as the only jurisdiction which refuses to apply federal standards in guilty plea proceedings and in review of guilty plea convictions.* All other jurisdictions, federal and state, have either by statute, rule of procedure, or judicial decision implemented the *Boykin* decision. No other state has refused to apply federal standards in establishing procedures to permit review of guilty plea convictions in state courts.

Only two significant issue have divided state courts in implementing *Boykin*. One is whether *Boykin* precludes the introduction of extrinsic evidence in a collateral attack proceeding to enable the State to meet its burden to prove the accused's plea was voluntary and intelligent. The other is whether a trial judge before accepting the plea must specifically enumerate and obtain express waivers from the defendant of the three constitutional rights articulated in *Boykin* which are waived by a guilty plea. These issues are exhaustively discussed in *Davis v. State*, 278 Md. 103, 361 A.2d 113 (1976), and *Wood v. Morris*, 87 Wash.2d 501, 554 P.2d 1032 (1976).

Resolution of the first issue turns on whether *Boykin* constitutionalized *McCarthy* in requiring the affirmative showing to appear in the record of the plea proceeding. Decision of the second issue turns on whether Justice Douglas, the author of *Boykin*, was correct when he later said *Boykin* requires enumeration and specific waiver of the rights. See *Johnson v. Ohio*, 419 U.S. 924, 95 S.Ct. 200, 42 L.Ed.2d 158 (1974).

In *Sisco* we adopted standards requiring the *Boykin* showing to be made in the plea proceeding. In *Brainard* we adopted a standard requiring the articulation and waiver on the record of the three rights mentioned in *Boykin*, although not on constitutional grounds. These cases put us with the vast majority of jurisdictions. Under rule 11, Fed.R.Crim.P., all federal courts are bound by a similar procedure. A clear majority of states have imposed similar requirements, frequently by statute or rule of criminal procedure. In the minority of states, where a *Sisco-Brainard* procedure is not mandated, almost all recommend such a procedure. All require the voluntary and intelligent nature of the plea to be affirmatively demonstrated.

However, the problem is not just this court's retraction of *Sisco* and *Brainard*. It is that in putting those decisions aside, the court has substituted procedures which infringe substantive and procedural due process.

No jurisdiction has devised rules like those adopted by this court today, resurrecting the assumption interred by *Boykin* that a counseled guilty plea is voluntary and intelligent, and effectively foreclosing state court appeal and postconviction review. All jurisdictions except Iowa now recognize the necessity of applying federal standards to determine and review whether a guilty plea is voluntary and intelligent. The procedures in other jurisdictions are instructive and persuasive in demonstrating that this court is mistaken in the present case.

All federal courts are obliged to follow rule 11, Fed.R.Crim.P., in taking guilty pleas. In material part, it provides:

Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and

(2) if the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if necessary, one will be appointed to represent him; and

(3) that he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

(4) that if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and

(5) that if he pleads guilty or nolo contendere, the court may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement.

Rules in the state courts and District of Columbia are as follows:

1. *Alabama.* *Walcott v. State,* 288 Ala. 546, 547, 263 So.2d 178 (1972) ("the record [on appeal] must affirmatively show the colloquy between the court and defendant wherein the defendant is shown to have full understanding of what the plea of guilty connotes and its consequences"); *Twyman v. State,* 293 Ala. 75, 300 So.2d 124 (1974) (record must affirmatively disclose defendant was informed of and aware his plea of guilty waived the *Boykin* rights); see also *Pride v. State,* 294 Ala. 359, 317 So.2d 542 (1975).

2. *Alaska.* Alaska R.Crim.P. 11 conforms to rule 11, Fed.R.Crim.P., *Sisco* and *Brainard* in not only requiring an on-the-record colloquy in the plea-taking procedure, but requiring specific articulation and waiver of the *Boykin* rights. See *Barrett v. State,* 544 P.2d 830 (Alaska 1975), opin. on reh., 546 P.2d 161 (Alaska 1976); see also *Ingram v. State,* 450 P.2d 161 (Alaska 1969); *Else v. State,* 555 P.2d 1210 (Alaska 1976).

3. *Arizona.* Rule 17.2, Ariz.R.Crim.P., requires a procedure like that under rule 11, Fed.R.Crim.P. A check list is provided. *State v. Tiznado,* 112 Ariz. 156, 157, 540 P.2d 122, 123 (1975) ("[For his plea to] be considered intelligent, it must be shown that the accused was aware of the right to trial by jury, the right of confrontation, and the privilege against self-incrimination."); see *State v. Young,* 112 Ariz. 361, 542 P.2d 20 (1975) (defendant must be informed of nature of charge—record must show his awareness); *State v. Darling,* 109 Ariz. 148, 506 P.2d 1042 (1973).

4. *Arkansas.* Rule 24.4, Ark.R.Crim.P., requires a record to be made in the plea proceeding comparable to that required under federal rule 11. The rule was effective January 1, 1976. For an earlier case recommending the same procedure and approving the ABA standards adopted in *Sisco,* see

*Byler v. State*, 257 Ark. 15, 513 S.W.2d 801 (1974).

5. *California.* In an early case, *In re Tahl*, 1 Cal.3d 122, 81 Cal.Rptr. 577, 460 P.2d 449 (1969), cert. denied, 398 U.S. 911, 90 S.Ct. 1708, 26 L.Ed.2d 72 (1970), the California Supreme Court adopted procedures like those in federal rule 11, *Sisco* and *Brainard*.

6. *Colorado.* Colo.R.Crim.P. 11 requires procedures like those in federal rule 11, *Sisco* and *Brainard*. In addition, the rule requires that the court advise the defendant of the elements of the charge. See *People v. Murdock*, 187 Colo. 418, 532 P.2d 43 (1975); see also *People v. Randolph*, 175 Colo. 454, 458, 488 P.2d 203, 205 ("*The American Bar Association Standards of Criminal Justice Relating to Pleas of Guilty* have codified our existing law.").

7. *Connecticut.* In *State v. Bugbee*, 161 Conn. 531, 535–536, 290 A.2d 332, 334 (1971), the court said:

> \* \* \* The record in the present case does not reveal any facts from which a reasonable conclusion could be drawn that the plea was intelligent and voluntary. Nothing was ascertained from the defendant regarding his plea and the court did not inquire into the factual basis of the plea. The record in this case can be characterized as a "silent record" and does not comply with constitutional standards as determined in the *Boykin* case.

> \*    \*    \*    \*    \*    \*

> To insulate from attack convictions after a plea of guilty, the trial court is best advised to conduct an on-the-record examination of the defendant which will disclose, inter alia, a full understanding of what the plea connotes and of its consequences, and which will demonstrate that the plea of guilty was entered intelligently, knowingly and voluntarily.

See *State v. Anonymous*, 31 Conn.Sup. 501, 320 A.2d 327 (1974) (a mere routine inquiry involving standard questions will not suffice).

8. *Delaware.* Del.Super.Ct. (Crim.) R. 11 requires an on-the-record colloquy between the court and defendant in which defendant's awareness of the consequences of his plea is established. See *Robinson v. State*, 291 A.2d 279 (Del.Supr.1972) (interpretations of similar federal rule 11 are persuasive); *Muzzi v. Delaware*, 265 A.2d 31 (Del.Supr.1970); *Brown v. State*, 250 A.2d 503 (Del.Supr.1969).

9. *District of Columbia.* Super.Ct.Cr.R. 11 is identical to federal rule 11 as it read when interpreted in *McCarthy*. See *Austin v. United States*, 356 A.2d 648 (D.C.App. 1976).

10. *Florida.* Rule 3.170, Fla.R.Crim.P., is patterned on federal rule 11 and the ABA standards. *Williams v. State*, 316 So.2d 267 (Fla.1975); *State v. Lyles*, 316 So.2d 277 (Fla.1975); *Lamadline v. State*, 303 So.2d 17 (Fla.1974).

11. *Georgia.* When a defendant raises the question of the validity of his guilty plea, the state has the burden to prove by the record in the guilty plea proceeding or postconviction record that the defendant was aware of waiver of his *Boykin* rights; this burden is not met by showing the defendant was represented by competent counsel. *Roberts v. Greenway*, 233 Ga. 473, 211 S.E.2d 764 (1975). Since *Boykin*, a Georgia trial judge has the same duty as a federal judge under rule 11. *Purvis v. Connell*, 227 Ga. 764, 182 S.E.2d 892 (1971).

12. *Hawaii.* When a guilty plea conviction is challenged, the State must prove the accused voluntarily and with full understanding of the consequences pled guilty and waived his constitutional rights of trial by jury, self-incrimination, and confrontation of his accusers. *Carvalho v. Olim*, 55 Hawaii 336, 519 P.2d 892 (1974). Rule 11, Hawaii R.Crim.P., provides the trial judge shall not accept a guilty plea without first determining it is made voluntarily and with understanding of the charge. Although no "litany" or "ritual" is required, the record on review must affirmatively show the defendant's understanding. *State v. Dicks*, Hawaii, 549 P.2d 727 (1976).

13. *Idaho.* The record on appeal of a guilty plea conviction must affirmatively

show the defendant knowingly and voluntarily waived his *Boykin* rights. *State v. Roderick*, 97 Idaho 82, 540 P.2d 267 (1975); *State v. Mooneyham*, 96 Idaho 145, 525 P.2d 340 (1974).

14. *Illinois.* Supreme Court Rule 402 contains the same requirement regarding advice and determining the defendant's awareness in a plea-taking proceeding as *Sisco, Brainard* and federal rule 11. See *People v. Wills*, 61 Ill.2d 105, 330 N.E.2d 505 (1975); *People v. Lee*, 33 Ill.App.3d 45, 337 N.E.2d 381 (1975).

15. *Indiana.* Section 35–4.1–1.3, Ind. Code, mandates a plea-taking procedure like that required in *Sisco, Boykin* and federal rule 11. See *Brimhall v. State*, 258 Ind. 153, 279 N.E.2d 557 (1972).

16. *Kansas.* Section 22–3210, Kan.Stat. Anno., follows the requirements of *Boykin* and federal rule 11. An on-the-record colloquy is required as in *Sisco* and *Brainard.* See *Robinson v. State*, 218 Kan. 1, 542 P.2d 305 (1975).

17. *Kentucky.* Rule 8.08, Ky.R.Crim.P., is like federal rule 11 at the time of *McCarthy.* An on-the-record colloquy between the trial court with the accused in which the *Boykin* matters are covered is required. *Hartsock v. Commonwealth*, 505 S.W.2d 172 (Ky.1974); see *Caldwell v. Commonwealth*, 503 S.W.2d 485 (Ky.1972).

18. *Louisiana.* A procedure like that in *Sisco* and *Brainard* is deemed required by *Boykin* in Louisiana case law. See *State v. Williams*, 327 So.2d 379 (La.1976); *State v. McKay*, 324 So.2d 363 (La.1975); *State v. Torres*, 281 So.2d 451, on reh., 281 So.2d 455 (La.1973); *State v. Allen*, 263 La. 123, 267 So.2d 544 (1972).

19. *Maine.* Rule 11, Me.R.Crim.P., which became effective in 1976, requires an on-the-record colloquy in which the court ascertains the defendant's awareness and the voluntariness of his plea. Prior cases hold the record on review, whether on appeal or from postconviction proceedings, must affirmatively show the voluntary and intelligent nature of the plea. *Clewley v. State*, 288 A.2d 468 (Me.1972); *Morgan v. State*, 287 A.2d 592 (Me.1972).

20. *Maryland.* The record under review when the validity of a guilty plea is challenged must affirmatively establish a voluntary and understanding waiver by the accused of his *Boykin* rights. While specific enumeration by the court is not mandated, it is recommended. *Davis v. State*, 278 Md. 103, 361 A.2d 113 (1976).

21. *Massachusetts.* In *Commonwealth v. Foster*, Mass., 330 N.E.2d 155, 159–160 (1975), the Massachusetts court adopted procedures like those in *Sisco, Brainard* and federal rule 11.

22. *Michigan.* Rule 785.7, Mich.Gen. Ct.R., requires a procedure more stringent than *Sisco, Brainard* and federal rule 11. See *In re Guilty Plea Cases*, 395 Mich. 96, 235 N.W.2d 132 (1975).

23. *Minnesota.* Rule 15.01, Minn.R. Crim.P., requires a detailed on-the-record colloquy which is perhaps the most exacting of those in all jurisdictions. The rule was effective July 1, 1975. See *State v. Hoaglund*, Minn., 240 N.W.2d 4 (1976).

24. *Mississippi.* A trial judge in Mississippi is required to address the defendant in an on-the-record colloquy to assure his plea of guilty is a voluntary and intelligent waiver of his rights within the meaning of *Boykin. Young v. State*, 264 So.2d 821 (Miss.1972); see also *Alexander v. State*, 226 So.2d 905 (Miss.1969).

25. *Missouri.* Rule 25.04, Mo.R.Crim.P., requires the court to determine the voluntary and intelligent nature of a guilty plea before it is accepted. Upon review, the necessary determination must affirmatively appear in the record. *State v. Smith*, 421 S.W.2d 501 (Mo.1967); see also *Flood v. State*, 476 S.W.2d 529 (Mo.1972), where a special concurrence recommends a checklist for use by trial judges.

26. *Montana.* Section 95–1606, Mont. Rev.Code Anno., requires an on-the-record colloquy between the trial judge and accused in which the voluntary and understanding nature of the plea is established. The Montana Supreme Court does not require the judge to enumerate the *Boykin*

rights as in federal rule 11. See *State v. Griffin*, Mont., 535 P.2d 498 (1975).

27. *Nebraska.* The ABA standards governing pleas of guilty have been held to "outline what should be the minimum procedure in the taking of [guilty] pleas." *State v. Turner*, 186 Neb. 424, 426, 183 N.W.2d 763, 765 (1971); see *State v. Simmons*, 188 Neb. 365, 196 N.W.2d 499 (1972).

28. *Nevada.* § 174.035, Nev.Rev.Stat., requires an on-the-record colloquy between the court and the defendant in which the voluntary and intelligent nature of the plea is established. See *Higby v. Sheriff of Clark County*, 86 Nev. 774, 476 P.2d 959 (1970); see also *Armstrong v. Warden*, 90 Nev. 8, 518 P.2d 147 (1974).

29. *New Hampshire.* Upon review of an attack upon validity of a guilty plea conviction, the State has the burden, under *Boykin*, to show the accused voluntarily and intelligently waived his *Boykin* rights. *State v. Beaulieu*, 115 N.H. 483, 344 A.2d 3 (1975); see also *State v. Allard* N.H., 356 A.2d 671 (1976) (execution of an acknowledgement of rights form held sufficient to show awareness the plea waived such rights).

30. *New Jersey.* A New Jersey rule of criminal procedure requires an on-the-record colloquy similar to that mandated by federal rule 11. *State v. Rhein*, 117 N.J.Super. 112, 283 A.2d 759 (1971).

31. *New Mexico.* Rule 21, N.M.R. Crim.P., requires procedures like those in *Sisco, Brainard* and federal rule 11. See *State v. Montler*, 85 N.M. 60, 509 P.2d 252 (1973).

32. *New York.* The procedure by which the voluntariness and intelligent nature of a guilty plea are affirmatively established in New York is to be governed by sound discretion in each case. *People v. Nixon*, 21 N.Y.2d 338, 287 N.Y.S.2d 659, 234 N.E.2d 687 (1967). An on-the-record showing is required, and "a simplistic reliance on the presence of counsel is not a sufficient solution." *People v. Francis*, 38 N.Y.2d 150, 153, 379 N.Y.S.2d 21, 23–24, 341 N.E.2d 540, 542 (1975).

33. *North Carolina.* Criminal Procedure Act § 15A–1022, N.C.Gen.Stat. ch. 15., requires procedures like those mandated in *Sisco, Brainard* and federal rule 11. The rule was effective in 1973. For a case imposing similar requirements before the rule was adopted, see *State v. Ford*, 281 N.C. 62, 187 S.E.2d 741 (1972).

34. *North Dakota.* Rule 11, N.D.R. Crim.P., is an adaptation of federal rule 11 as found in proposed amendments to the federal rules in 52 F.R.D. 415 (1971). It imposes *Sisco, Brainard* and present federal rule 11 standards. See *State v. Storbakken*, 246 N.W.2d 78 (N.D.1976).

35. *Ohio.* Rule 11, Ohio R.Crim.P., which was effective July 1, 1973, requires procedures like those in *Sisco, Brainard* and federal rule 11. See *State v. Stone*, 43 Ohio St.2d 163, 331 N.E.2d 411 (1975); *State v. Buchanan*, 43 Ohio App.2d 93, 334 N.E.2d 503 (1974).

36. *Oklahoma.* An Oklahoma statute requires that the defendant be fully advised by the court of his rights and of the consequences of his guilty plea. Oklahoma cases prescribe a procedure like that in *Sisco, Brainard*, and federal rule 11. *Feaster v. State*, 539 P.2d 401 (Okl.Cr.1975); *Smith v. Oklahoma City*, 513 P.2d 1327 (Okl.Cr.1973).

37. *Oregon.* An Oregon statute, § 135.-385, Ore.Rev.Stat., requires procedures like those prescribed in *Sisco, Brainard* and federal rule 11. See *State v. Gray*, Or., 549 P.2d 1112 (1976).

38. *Pennsylvania.* Rule 319, Penn.R. Crim.P., as amended March 28, 1973, codifies a procedure similar to federal rule 11. The same requirements had previously been imposed by case law. See *Commonwealth ex rel. West v. Rundle*, 428 Pa. 102, 237 A.2d 196 (1968), quoted with approval by the Supreme Court in *Boykin*, 395 U.S. at 244, 89 S.Ct. at 1713, 23 L.Ed.2d at 280 n. 7. See also *Commonwealth v. Martin*, 445 Pa. 49, 282 A.2d 241 (1971).

39. *Rhode Island.* An on-the-record colloquy like that required by *Sisco, Brainard* and federal rule 11 is mandated by case law. *Flint v. Sharkey*, 107 R.I. 530, 268

A.2d 714 (1970); *Cole v. Langlois*, 99 R.I. 138, 206 A.2d 216 (1965).

40. *South Carolina.* In *State v. Armstrong*, 263 S.C. 594, 598, 211 S.E.2d 889, 891 (1974), the court said, "The court must give the defendant adequate warning of the consequences of the plea in every case. The Court's warning should include an explanation of the defendant's waiver of constitutional rights and a realistic picture of all sentencing possibilities." See *State v. Lambert*, S.C., 225 S.E.2d 340 (1976); *White v. Strickland*, 263 S.C. 226, 209 S.E.2d 436 (1974) (an affirmative on-the-record waiver must be shown).

41. *South Dakota.* S.D.Comp.Laws § 23–35–19 requires the trial judge "to fully advise [the defendant] of his rights in the premises." An on-the-record affirmative showing of waiver is required. See *Nachtigall v. Erickson*, 85 S.D. 122, 178 N.W.2d 198 (1970); *Merrill v. State*, 87 S.D. 285, 206 N.W.2d 828 (1973).

42. *Tennessee.* Procedures conforming to *Boykin* and the ABA standards are required. See *Troletti v. State*, 483 S.W.2d 755 (Tenn.Cr.App.1972); *Ellis v. State*, 4 Tenn.Cr.App. 204, 470 S.W.2d 22 (1971).

43. *Texas.* Art. 26.13, Tex.Code Crim.P., requires the trial court to advise the defendant regarding penalty. Judicial decisions require that the record affirmatively show a waiver of *Boykin* rights. *Franks v. State*, 513 S.W.2d 584 (Tex.Cr. App.1974). Compliance with the ABA standards is recommended. *Ex parte Taylor*, 522 S.W.2d 479 (Tex.Cr.App.1975).

44. *Utah.* The record under review must affirmatively show the accused's plea was voluntarily and intelligently entered. *Banks v. Turner*, 29 Utah 2d 154, 506 P.2d 73 (1973).

45. *Vermont.* Rule 11, Vt.R.Crim.P., requires procedures like those mandated in *Sisco, Brainard* and federal rule 11. For a prior case requiring compliance with *Boykin*, see *In re Lamphere*, 127 Vt. 604, 607, 256 A.2d 29, 31 ("These constituents [knowledge of guilty plea consequences] should be confirmed in the record of conviction.")

46. *Virginia.* Rule 3A:11, Va.Ct.R., requires the judge to determine the plea is made voluntarily with an understanding of the nature of the charge and the consequences of the plea. The record under review must show the accused fully understood his rights and the effect of his plea. *Miracle v. Peyton*, 211 Va. 123, 176 S.E.2d 339 (1970).

47. *Washington.* Rule 4.2, Wash.Cr.R., imposes requirements like those in *Sisco, Brainard* and federal rule 11. See *Wood v. Morris*, 87 Wash.2d 501, 554 P.2d 1032 (1976).

48. *West Virginia.* A procedure even more detailed than that required in *Sisco, Brainard* and federal rule 11 is mandated by *Call v. McKenzie*, W.Va., 220 S.E.2d 665 (1975).

49. *Wisconsin.* Wis.Stat.Anno. § 971.08 is modeled on federal rule 11 as it read when interpreted in *McCarthy*. The record under review must affirmatively show that the defendant voluntarily and intelligently waived his *Boykin* rights. See *Edwards v. State*, 51 Wis.2d 231, 186 N.W.2d 193 (1971).

50. *Wyoming.* Rule 15, Wyo.R.Crim.P., provides that the trial judge shall not accept a guilty plea "without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea." An on-the-record colloquy must affirmatively show his awareness of his rights and the consequences of the plea at the time it is tendered. *Cardenas v. Meacham*, 545 P.2d 632 (Wyo.1976).

A common denominator of principles is reflected in the procedures used in other jurisdictions. It may be summarized this way: a plea of guilty is a waiver of several constitutional rights; a strong presumption exists against the validity of such a waiver; the question of waiver is governed by federal standards; it will not be presumed from a silent record nor from the presence of counsel; the burden is on the government to establish it; the judge has a duty

to make inquiry and determine the constitutional validity of the plea prior to accepting it; acceptance of the plea must be approached with the utmost solicitude for the rights of the accused; and a guilty plea conviction cannot be upheld on appeal unless the record affirmatively shows the plea was voluntary and intelligent under these standards.

Contrary to the allegation of the special concurrence, this dissent makes no claim that all jurisdictions prescribe *Sisco-Brainard* procedures. Cases cited by the special concurrence reflect only the division among state courts addressed in *Brainard*, discussed there and previously adverted to in this dissent, involving whether *Brainard* procedures should be adopted to implement *Boykin* and whether the state should be allowed to buttress a deficient plea-taking record by introducing extrinsic evidence in a collateral attack proceeding. See also *Wallace v. State*, 245 N.W.2d 325, 328–331 (Iowa 1976) (special concurrence).

It is most remarkable that the special concurrence endorses *In re Guilty Plea Cases*, 395 Mich. 96, 235 N.W.2d 132 (1975), and *People v. Jaworski*, 387 Mich. 21, 194 N.W.2d 868 (1972), as support for its views. In the former case the Michigan Supreme Court amended its rules of criminal procedure to impose the following duty on trial judges in plea proceedings:

A defendant may plead guilty or nolo contendere only with the court's consent. Prior to accepting the plea, the court shall personally carry out subrules 785.-7(1)–(4).

(1) An Understanding Plea. Speaking directly to the defendant, the court shall tell him:

(a) the name of the offense to which he is pleading; the court is not obliged to explain the elements of the offense, or possible defenses;

(b) the maximum possible prison sentence for the offense;

(c) if he has been previously convicted of a felony, he may be charged as a habitual offender and the maximum possible sentence may be increased;

(d) the mandatory minimum prison sentence, if any, for the offense;

(e) if he is on probation or parole, he may be sentenced for violating probation or parole;

(f) if the plea is to murder, armed robbery or treason, he cannot be placed on probation;

(g) if his plea is accepted, he will not have a trial of any kind, so he gives up the rights he would have at a trial, including the right

(i) to trial by a jury;

(ii) to trial by the court if he does not want trial by a jury;

(iii) to be presumed innocent until proved guilty;

(iv) to have the prosecutor prove beyond a reasonable doubt that he is guilty;

(v) to have the witnesses against him appear at the trial;

(vi) to question the witnesses against him;

(vii) to have the court order any witnesses he has for his defense to appear at the trial;

(viii) to remain silent during the trial;

(ix) to not have his silence used against him; and

(x) to testify at the trial if he wants to testify.

(2) A Voluntary Plea.

(a) The court shall ask the prosecutor and the defendant's lawyer whether they have made a plea agreement.

(b) If there is such a plea agreement, the court shall ask the prosecutor or the defendant's lawyer, what the terms of the agreement are and shall confirm the terms of the agreement with the other lawyer and the defendant.

(c) the court shall ask the defendant:

(i) (if there is no plea agreement) whether anyone has promised him anything, or (if there is a plea agreement) whether anyone has promised him anything beyond what is in the plea agreement;

(ii) whether anyone has threatened him; and

(iii) whether it is his own choice to plead guilty.

(3) An Accurate Plea.

(a) If the defendant pleads guilty, the court, by questioning him, shall establish support for a finding that he is guilty of the offense charged or the offense to which he is pleading.

(b) * * *

(4) Additional Inquiries and Statements by the Court.

Upon completing the colloquy with the defendant, the court shall,

(a) ask the prosecutor and the defendant's lawyer whether the court has complied with subrules 785.7(1)–(3). If it appears to the court that it has failed to comply, the court shall do so.

(b) state whether the court has agreed upon the possibility of a plea or the possible sentence with the prosecutor or the defendant or anyone acting in the interests of either, and if so, that to which the court has agreed.

(5) Acceptance of Plea.

The court shall not accept the plea unless it is convinced that the plea is understanding, voluntary and accurate.

(6) Setting Aside the Plea. The court may take the plea under advisement.

(a) Until the court accepts the plea on the record, the defendant may withdraw it as a matter of right.

(b) After the court accepts the plea:

(i) the court may set it aside on defendant's motion; or

(ii) the court may *sua sponte* set it aside, but only with defendant's consent.

395 Mich. at 139–141, 235 N.W.2d at 149–150; Rule 785.7, Mich.Gen.Ct.R.

The duties imposed on Michigan trial judges in this rule are far more extensive than we have imposed on Iowa trial judges in *Sisco* and *Brainard*. Moreover, failure of the judge under this rule to advise the accused of his "*Jaworski*" rights to a jury trial, to confront his accusers and to remain silent requires reversal in Michigan just as it does in Iowa. The only retreat of the Michigan court in *In re Guilty Plea Cases* was its shift from a 1974 mandate of strict compliance with the requisites in a plea proceeding to a standard of substantial compliance. In making this change, the court embraced the norm for compliance we adopted in *Sisco* and *Brainard*. See *Sisco*, 169 N.W.2d at 551, and *Brainard*, 222 N.W.2d at 714. This is also the standard required under federal rule 11. *Sappington v. United States*, 468 F.2d 1378, 1380 (8 Cir. 1972), cert. denied, 411 U.S. 970, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973). The Michigan court expressly rejected the notion that a *Jaworski* defect could be cured in a supplementary proceeding ("A *Jaworski* defect cannot be corrected on a remand."). 235 N.W.2d at 141. I do not understand how the special concurrence can quote and cite *In re Guilty Plea Cases* and *Jaworski* with warm approval in support of principles which those cases repudiate. If as the special concurrence alleges, this dissent "grossly exaggerates the majority opinion's purpose and effect", perhaps one may safely conclude the procedure in guilty plea cases in Iowa after today should conform with that required in Michigan. Although we have not previously required as much, this approach has considerable merit.

Whether the "present state of the law in other jurisdictions" is "precisely contrary to the dissent's claims" as asserted in the special concurrence can best be answered by examination of the statutes, rules and cases cited in the dissent in light of those claims. Although jurisdictions differ on certain aspects of *Boykin* implementation, no jurisdiction before today refused to recognize and apply federal constitutional standards to guilty plea proceedings. The clear majority of jurisdictions have adopted procedures like those in *Sisco* and *Brainard*. Many of them have done so within the last two years. Other jurisdictions commend such procedures but do not mandate them. In this context, the assertion that this activity demonstrates a trend toward heightened rather than lowered sensitivity to the critical issues in guilty plea cases is a modest one. No other jurisdiction has taken the giant step backward which this court takes

today. The common denominator of principles from other jurisdictions is a statement of the minimum standards collectively agreed upon as essential to due process.

Agreement of other jurisdictions on these standards is nothing more nor less than a reflection of adherence to *Boykin.* Iowa now stands alone in its refusal to apply them.

Of course it is possible that this court is right and every other jurisdiction is wrong, but I do not believe so. We should give some deference to the collective experience and wisdom of those elsewhere who have developed and promulgated standards and procedures designed to assure due process of law in guilty plea cases.

XIV. *The Sisco-Brainard procedures are the most reasonable means of implementing Boykin.* No rules of procedure are infallible. The *Sisco-Brainard* procedures are far from perfect. Fortunately our system of justice demands only fairness, not perfection. These procedures encourage the kind of probing inquiry which should enable the judge in most cases to determine correctly whether the defendant's plea is voluntary, intelligent and accurate. Unless the trial judge makes the kind of record which the *Sisco* and *Brainard* standards require, the factors which must appear affirmatively in the record for the plea to stand under *Boykin* will probably not be there. These procedures give visibility to the plea process and objectify it to the extent possible.

It is true, as the majority asserts, that the issue whether a plea of guilty is understandingly made requires inquiry into the accused's state of mind at the time of his plea. Because the accused's understanding is a subjective matter, we are told it is difficult to demonstrate it objectively. Therefore, the majority concludes, it need not be demonstrated objectively. Instead the assurances of counsel may be relied on, and the burden will be on the accused to plead and prove his unawareness in a motion in arrest of judgment, failing which he presumably is forever foreclosed from raising the issue.

By the same reasoning we should relieve the State from its obligation to prove intent when intent is an element in a particular crime. This element is also subjective and seldom capable of direct proof. Perhaps the existence of intent should be presumed and the burden be placed on the accused to rebut it once the *actus reus* of the offense has been established. But it is an infringement of the due process clause of the federal constitution to indulge in such a presumption. *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). Similarly, it is a denial of due process to presume a drug sale is a nonaccommodation offense to relieve the State of the burden of proving a state of mind essential to justify a more severe penalty. *State v. Monroe,* 236 N.W.2d 24 (Iowa 1975). The majority's reasoning in the present case contains the same due process flaw. The same logic would support requiring defendants convicted after trial to plead and prove their innocence as a condition precedent to relief.

Furthermore, the remedy advanced by the majority is a *non sequitur.* A problem is not solved when it is buried. It is just obscured from visibility.

The majority's complaint that under present procedures a defendant is able to upset his guilty plea without even claiming his unawareness makes a nice debating point but has no practical significance. A defendant who was truly unaware will have no problem in alleging his unawareness once, if ever, he discovers this ground of challenge. A defendant who was aware but who wishes to upset his conviction because the record does not show his awareness is not likely to be inhibited by the necessity of alleging his unawareness. In addition, as previously pointed out, the burden of persuasion on the issue must remain with the State as a matter of due process.

The majority, while deriding the alleged formalism of present procedures, has introduced this formality in its new procedures. If a proper purpose is served by requiring the defendant to claim he did not in fact understand the nature of the charge or the consequences of his plea, this requirement could be imposed as a condition precedent

to relief in this court without otherwise changing present procedures. However, under *Boykin*, the issue must still be decided based on what the record shows, and the State bears the risk of non-persuasion.

Those who are interested in justice should not be pleased with today's decision. The court affirms two felony convictions of a defendant who was misinformed by the trial judge of the nature of the offenses. In doing so the court revives principles which deny due process, ignores or overrules precedent, rejects the lessons of experience, scholarly studies, the view of the legislature, and the example of other jurisdictions, and effectively closes the doors of the state court to review of guilty plea convictions. As a result the court has violated a precept articulated by Learned Hand which is presupposed by our constitutional framework: "Thou shalt not ration justice."

It is true now as it was in 1969 that no adequate substitute exists for making a complete record on the voluntary, intelligent and accurate nature of a guilty plea at the time it is tendered.

It is also true now as it was then that it is "not too much to require that, before sentencing defendants to years of imprisonment, district judges take the few minutes necessary to inform them of their rights and determine whether they understand the action they are taking." *McCarthy v. United States*, supra, 394 U.S. at 472, 89 S.Ct. at 1174, 22 L.Ed.2d at 428–429. The *Sisco-Brainard* procedures, like rule 11 in the federal system, still provide the most reasonable means of assuring due process and justice in guilty plea cases.

In *Blackledge, Warden v. Allison*, —— U.S. ——, 97 S.Ct. 1621, 52 L.Ed.2d 136 (decided May 2, 1977), the Supreme Court contrasted North Carolina procedures which. did not require a full inquiry in a plea proceeding with those later adopted by North Carolina which do. The court complained that inadequate plea procedures require additional litigation which "eliminate[s] the chief virtues of the plea system —speed, economy, and finality." *Id.* at ——, 97 S.Ct. at 1628. In commending

North Carolina for improving its procedures, the Court noted procedures like those adopted "serve (1) to prevent the occurrence of constitutional errors in the arraignment process, and (2) to discourage the filing of baseless petitions for habeas corpus and facilitate speedy but fair disposition of those that are filed." *Id.* at ——, 97 S.Ct. at 1632, n. 20. Thus the Court reiterated the principles of *McCarthy* and endorsed procedures similar to those required under federal rule 11, *Sisco* and *Brainard*, and under Ia.R.Crim.P. 8, which will be effective in Iowa January 1, 1978.

Justice Powell, concurring specially in *Blackledge*, emphasized the importance of a full and adequate record in the original plea proceeding, calling the case "an example, however, of how finality can be frustrated by failure to adhere to proper procedures at the trial court level." —— U.S. at ——, 97 S.Ct. at 1634. He added:

> The case is here, five years after respondent's conviction, and following review by the North Carolina courts, the United States District Court and the Fourth Circuit Court of Appeals, primarily because the record before us leaves room for some doubt as to the reliability of the procedure followed with respect to the guilty plea. *Id.*

His concluding observation sums up the basis of our prior cases, the position of the legislature, and the thrust of this dissent:

> If all participants in the process at the plea stage are mindful of the importance of adhering carefully to prescribed procedures and of preserving a full record thereof, the causes of justice and finality both will be served. *Id.*

I would reverse the convictions in the present case and remand to permit the defendant to plead anew.

MASON, RAWLINGS and REYNOLDSON, JJ., join this dissent.