CALOGERO, Justice.
Defendant Bruce McKay was charged, along with Kenneth Juneau and Joseph Martinez, with the armed robbery of Willie Daigrepont. At his arraignment, while represented by court-appointed counsel, he entered a plea of not guilty. On the morning set for trial, December 9, 1974, after one of his co-defendants, Kenneth Juneau (who was represented by the same court-appointed attorney), had entered a plea of guilty, McKay changed his plea and similarly entered a plea of guilty in accordance with a plea bargain.
Before defendant was sentenced, McKay’s family retained counsel who filed a motion to appoint a sanity commission and a motion to withdraw defendant’s guilty plea. Sentencing was postponed and these motions were heard and denied on April 3, 1975. Defendant was then sentenced to five years in the custody of the Louisiana Department of Corrections. From this judgment he appeals, relying on three assignments of error.
Defendant McKay’s assignments of error attack the trial court’s ruling that he had the present capacity to proceed (present
sanity) ; the trial court’s ruling that the Boykin examination at the time of entry of the guilty plea was adequate, making his plea sufficiently free, voluntary, and intelligent so as to support the trial court’s decision not to permit its withdrawal; and the trial court’s more general ruling refusing to permit defendant to withdraw his guilty plea. We do not find merit in any of defendant’s assignments of error.
Defendant complains that the trial coutt erred when it ruled that he had the present capacity to proceed.[1] Without reciting more than a few details concerning the evidence adduced on the plea, we note that the record shows that the defendant understood the proceedings against him and was able to assist in his defense[2] C. Cr.P. art. 641. There was no indication that he could not remember the circumstances of the occasion which gave rise to the criminal charges against him. Defendant himself testified at the hearing on the motions. The transcript of his testimony demonstrates no confusion, and does not illustrate an inability to assist his attorney in his defense.
There was no error in the ruling of the court on the plea of present insanity.
*366 With respect to the second specification of error concerning the examination pursuant to Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), it is evident that this defendant, represented by court-appointed counsel,[3] was adequately advised in open court of his constitutional rights, and it is evident that his guilty plea was freely, voluntarily, and understandingly made. In particular, we find from a review of the transcript that the trial judge advised the defendant of his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers.[4] Furthermore, the judge did ascertain that the plea was not coerced.
This assignment of error lacks merit.
Defendant’s third specification of error is his general assertion that the trial court erred in refusing to permit him to with *367 draw his guilty plea. Defendant relies upon several assertions: that his court-appointed counsel had a conflict of interest because he also represented co-defendants in the case; that his attorney purportedly persuaded him to plead guilty and that he was unable to withstand that persuasion; and his somewhat belated contention that he was not in fact guilty of armed robbery.
At the outset we note that determination to allow defendant to withdraw a guilty plea is within the discretion of the trial court and it will not be disturbed in the absence of manifest error.
Article 559 of the Code of Criminal Procedure provides in part that “[t]he court may permit a plea of guilty to be withdrawn at any time before sentence.” This statutory rule generally prevails in the United States.[5] Y. Kamisar, W. LaFave, J. Israel, Modern Criminal Procedure (4th ed. 1974) p. 1186.
With respect to defendant’s three-pronged effort to have this court find an abuse of discretion on the part of the trial judge in refusing to permit withdrawal of the guilty plea, we find insufficient merit to warrant a finding of error in the trial court’s ruling. There was no conflict in the court-appointed attorney’s representing both defendant McKay and co-defendant Juneau.[6] The record does not indicate that counsel unduly persuaded defendant to enter a plea of guilty.[7] And his simple contention that he was not a co-conspirator with the other perpetrators of the crime (he claims that he “just went along for the ride”) was not sufficiently plausible, in light of his earlier explicit confession, to compel the trial judge to allow defendant to withdraw his guilty plea.
The only argument even approaching a meritorious one is that defendant was purportedly generally unable to withstand persuasion, that he vacillated between changing and not changing his not guilty plea, and that he ultimately decided to change his plea only at the last moment prior to trial. While his intelligence may have been borderline, he was not clearly retarded; and while he may have been a person easily led, the decision that was ultimately made was his own.
Although a decision by the trial court to allow the withdrawal of the guilty plea in this instance may well have been supported by the record and a concomitant respect for the exercise of constitutional privileges, we cannot, consistent with law, conclude that the trial judge, who gave this matter his most serious attention and who observed and heard the witnesses, abused the discretion vested in him by C. Cr.P. art. 559 when he refused to permit the withdrawal of the guilty plea. There is no error in the ruling of the trial court warranting reversal of this conviction.
For the reasons assigned, the conviction and sentence are affirmed.
*368 DIXON, J., dissents with reasons.
BARHAM, J., dissents, being of the opinion the guilty plea should be set aside and that on remand there should be a new determination of defendants’ competency to proceed to trial.

. The motion on present capacity was the first matter taken up because Article 642 of the Code of Criminal Procedure requires that “[wlhen the question of the defendant’s mental incapacity to proceed is raised, there .shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed.”

. The issue is not entirely free from doubt because I)r. Richard R. Michel, a surgeon and general practitioner appointed by the court as one of the two members of the sanity commission, testified that defendant was able to assist ‘‘somewhat in this defense, not in a meaningful and effective manner” and that McKay “does not have the mental capacity to proceed.” (At the time he was examined, defendant was seventeen years old and had an I.Q. of 79; school records reveal lie scored an 84 on an earlier I.Q. test.) While Dr. Michel’s statements seem at first glance to indicate that defendant did not have the capacity to proceed, that indication was overcome by the evidence adduced at the hearing at which a number of witnesses were called, among them, in addition to the two members of the sanity commission, were Dr. Charles Saint, a psychiatrist, and several of defendant’s school teachers. On the basis of the evidence received, the trial judge ruled that defendant had the present capacity to proceed. The judge stated the reasons for his determination, as follows:
“I have listened to the evidence very carefully and I feel that he is able to proceed in the trial of this case. I think the doctors who testified generally agree to that. Now, they did say there was some, may be a little bit hard to communicate, but they all agreed that he could communicate on the level that he has. And, the IQ’s that he has registered and the grades that he has achieved, ability to get along with classmates in school and so on, convince the Court beyond a reasonable doubt that he is able to proceed and to assist counsel in his defense. That will be my ruling

. The court-appointed counsel had negotiated a plea bargain which called for defendant to plead guilty to armed robbery in exchange for receiving a sentence of five years, the minimum sentence for armed robbery.

. The defendant stated that he was seventeen years old and had completed the ninth grade. He stated that he had been conferring with his attorney and wished to change his plea to guilty. The trial judge and the defendant then engaged in the following colloquy:
“BY THE COURT:
Before the Court can accept your plea I must first be sure you understand what you’re doing. You’re charged with armed robbery. This is a serious offense. And it means you will have to serve time with the the Department of Corrections. Not only that, it means that you will lose certain rights of citizenship until you get a pardon. Do you understand that?
“BY THE DEPENDANT:
Yes sir.
“BY THE COURT:

Is anyone making you plead guilty?

“BY THE DEPENDANT:

No sir.

“BY THE[1] COURT:
Are you doing this of your own free will? “BY THE DEPENDANT:

Yes sir.

“BY THE COURT:
All right. You have talked to your lawyer about this repeatedly, many times, I’m sure. “BY THE DEPENDANT:
Yes sir.
“BY THE COURT:
All right. Now, you know you have an absolute right to a jury trial. You don’t have to plead guilty, you understand that? “BY THE DEPENDANT:

Yes sir.

“BY THE COURT:
And, you understand that it’s, the burden is on the state to prove you’re guilty beyond a reasonable doubt?
“BY THE DEPENDANT:
Yes sir.
“BY THE COURT:
To the jury? Now, if I accept your jilea of guilty it means that you’re giving up yoUr jury trial. You’re, also giving up the District Attorney’s calling witnesses to prove the case against you. You understand? “BY THE DEPENDANT:

Yes sir.

“BY THE COURT:
.There will be no witnesses called. And, it also means that you’re making the confession yourself. You’re saying I’m guilty of this crime. I want to plead guilty, which you are not required to do. You understand that?
“BY THEI DEPENDANT:
Yes sir.
“BY THE COURT:
And, you tell the Court that you’re willing to do this this morning with your lawyer standing beside you?
“BY THE DEPENDANT:
Yes sir.
“BY THE COURT:
All right. Has your lawyer informed you or are you aware of the fact that there’s been some talk between your lawyer and the District Attorney about what you might expect if you pelad (sic) guilty?
“BY THE DEPENDANT:
Five years.
“BY THE COURT:
Five years where?
“BY THE DEFENDANT:
ANGOLA.
“BY THE COURT:
At Angola. All right. So, rather than take a chance on a' trial and maybe get more,, you’re willing to enter this plea and take this sentence;
“BY THEI DEPENDANT:
Yes sir.
“BY THE COURT:
And, that’s _ you’re aware of what you are supposed to get?
“BY THE DEPENDANT:
Yes sir.
“BY THE COURT:
All right. The Court has interviewed the young man and his lawyer. Mr. Michael *367 Kelly is right beside him and I think he understands what he’s doing. His right, his constitutional rights have been explained to him and the Court will accept his plea of guilty and remand him for sentence January ninth. So, you will have to come back without further notice on that day. ...” (Emphasis provided)

. Although this rule has not been found constitutionally infirm, see Justice Marshall’s dissenting opinion in Dukes v. Warden, Connecticut State Prison, 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972).

. This same attorney was appointed to represent the co-perpetrator Martinez, but only after the guilty pleas of McKay and Juneau liad already been entered.

. Counsel informed defendant that the decision of whether to enter the negotiated plea was his alone. He told defendant it was his duty to represent him if he chose to go to trial and that he would do the very best job he could. He made defendant aware of the realities of the situation: that there were damaging statements which would be introduced against him including a confession (the court had ruled against defendant on a motion to suppress) ; and that he might receive a greater sentence than the agreed-upon minimum five year sentence if convicted as a result of trial.